THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

United States of America            : CR. O6-125 (SR)

v.

Theresa M. Flood

## ORDER

And NOW this ____ day of _____, 2007, upon consideration of the Motion to Dismiss the Indictment of defendant Theresa M. Flood and any response thereto it is hereby ORDERED and DECREED that said the relief sought by means of said motion is GRANTED. It is further ORDERED and DECREED that counts one through four of the indictment are dismissed with prejudice.

_____
ROBINSON, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

United States of America           : CR. O6-125 (SR)

v.

Theresa M. Flood

DEFENDANT'S PRETRIAL MOTION TO DISMISS COUNTS
ONE THROUGH FOUR OF THE INDICTMENT

TO THE HONORABLE SUSAN ROBINSON:

Defendant, Theresa M. Flood, by her attorney, Richard G. Freeman, Esquire, hereby moves pursuant to Fed. R. Crim. Pro. 12 (b) (3) (B) that this Honorable Court issue an order dismissing counts one through four of the indictment and in support thereof respectfully represents:

1. The defendant, a 40-year old woman and single mother with no prior criminal record , was accused in a four-count indictment filed on November 16, 2006 of violating 18 U.S.C. §§ 1344 and 1342 charging bank fraud; 18 U.S.C. §§ 1028A and 2 charging identity theft and 18 U.S.C. § 1343 charging wire fraud.

2. The foregoing charges all arise from the actions of Glenny Coleman, a man who has pleaded guilty to federal crimes in connection with 1) stealing the identities of three persons, 2)

depositing a forged check in the name of one of his stolen identities into a legitimate bank account maintained by the defendant herein, and 3) using the defendant's bank account further to write a phony check to make a down payment on a home Mr. Coleman was buying for himself and a third person, Lisa Reed. Whom he identified as his fiancée. The indictment relates that the defendant made phone calls and accompanied Mr. Coleman while he looked at homes. (See indictment attached hereto as Exhibit "A" and its contents incorporated herein).

3. The indictment recites nothing but non-criminal, innocent conduct on the part of the defendant; the indictment fails to connect or conform the defendant's conduct with any federal crime.

4. The indictment alleges multiplicitous offenses: it recites the same activity for bank fraud and identity theft.

5. The indictment specifically fails to recite a plausible causal connection between the defendant and any wire transaction affecting a bank.

WHEREFORE, the defendant respectfully requests that this Honorable Court issue an order dismissing counts one through four of the indictment.

Respectfully submitted,

RICHARD G. FREEMAN

Attorney for Defendant

Date: January 16, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

United States of America          CR. O6-125 (SR)

v.

Theresa M. Flood

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S PRETRIAL MOTION TO DISMISS COUNTS
ONE THROUGH FOUR OF THE INDICTMENT

To the Honorable Susan Robinson:

The defendant has moved to dismiss the indictment on two grounds: 1) the conduct alleged in the indictment does not constitute a violation or violations of federal law, and 2) the indictment contains duplicitous and/ or multiplicitous counts, specifically the conduct alleged to sustain the counts charging identity theft and wire and bank fraud. This memorandum will address both points.

1. *No Violation of a Federal Crime- The Transactions*

The conduct the indictment alleges on the part of the defendant suggests no more than everyday pedestrian commercial activity. Another person—not the defendant—deposits a check into her account. Unbeknownst to the defendant that check stems from a credit line secured on stolen personal data. The defendant spent some of that

money. (Counts One and Two). In the second phase of the indictment the defendant calls a real estate agent and arranges for she and another person to view three houses. They did. Then, *without the participation of the defendant and along with a third person* that other person looks at a house, agrees to buy it, unbeknownst to the defendant issues a bogus check out of an account she holds and signs an agreement of sale. In the most elastic stretch of prosecutorial imagination the defendant is accused of wire fraud because a fax message she had *nothing* to do with issues from a mortgage company in Maryland to a real estate office in Delaware (Counts Three and Four).

a. *Argument*

In considering a motion to dismiss an indictment or a portion of an indictment, the court accepts as true the well-pleaded factual allegations set forth in the indictment. *See United States v. Besmajian, 910 F. 2d 1153, 1154 (3d Cir. 1990)*. If the facts do not constitute a violation of federal law, the charges should be dismissed. *See United States v. Polychron, 841 F. 2d 833, 834 (8th Cir.) cert. denied, 488 U.S. 851 (1988)*.

A neutral reading of the facts spelled out in the indictment can lead to the conclusion that the defendant was more of a victim than a perpetrator. In no instance does the indictment ascribe an affirmative action on the part of

Flood. Her checking accounts *were* used. Glenny Coleman –the con artist who used her accounts—performed all the fraudulent transaction without her complicity. The indictment is insufficient on its face to support the federal crimes alleged.

### 2. *Duplicitous/Multiplicitous Charges*

The indictment makes use of the same several acts in an overlapping fashion to justify culpability for three separate offenses—bank fraud, wire fraud and identify theft. This form of pleading is both duplicitous and multiplicitous.

### a. *Argument*

Duplicity is the "joining in a single count of two or more distinct and separate offenses." *United States v. Starks, 515 F. 2d 112, 116-17 (3d Cir. 1975)* The prohibition against duplicitous pleadings reflects three concerns. First, an acquittal on a duplicitous count "does not reveal whether jury found him not guilty of one crime or not guilty of both. Conceivably this could prejudice the defendant in protecting himself against double jeopardy." *Id.* Second, a guilty verdict "does not disclose whether the jury found the defendant guilty of one crime or of both. Conceivably, this could prejudice the defendant in sentencing and in obtaining appellate review." *Id.* Third, joining of offenses may prejudice the defendant with

respect to evidentiary rulings. "Finally, there is no way of knowing with a general verdict on two separate offenses joined in a single count whether the jury was unanimous with respect to either." *Id.* at 117

An indictment is multiplicitous when one crime or act has been divided into more than one count, *Geberding v. United States.*, *471 F. 2d 55, 58 (8th Cir. 1973)*. An indictment that charges a single offense in several counts violates the rule against multiplicity, *United States v. Kennedy, 726 F. 2d 546 (9th Cir. 1989)* ( defining multiplicity in favor of the government's right to charge the defendant in three counts for making false statements to a bank). The aim of the rule is to bar an indictment that divides an act into several criminal charges allowing multiple punishment for what is in essence a single act, *United States v. Carter, 576 F. 2d 1061, 1064 (3d Cir. 1978)*.

Here the defendant committed two distinct acts, if that—1) permitting her checking account to be used for bogus checks (here the defendant does not waive the argument that she is more the victim than the perpetrator, and 2) somehow , in the government's view, facilitating the fax-supported mortgage awarded Glenny Coleman on his false pretenses. Even if one regards such acts as criminal rather than passive, naïve and foolish—the acts of a victim -to place these subtle gestures before a jury in the form of three federal enactments would confuse them and result in a kaleidoscopic output

of wrong-headed thinking and , possibly, wrong headed and unjust verdicts. If the defendant is to be indicted at all the indictment should be reshaped to match the specific acts with the specifically alleged crimes.

## CONCLUSION

For the reasons set forth in the within motion and memorandum the defendant respectfully requests that this Honorable Court dismiss counts one through four of the indictment with prejudice.

Respectfully submitted,

RICHARD G. FREEMAN
Attorney at Law

Date: January 16, 2007

## CERTIFICATE OF SERVICE

I hereby certify that I have today served a copy of the within Motion to Suppress upon the following person by electronic transmission:

Beth Moskow-Schnall, Esquire
Assistant United States Attorney
1007 Orange street, 7th floor
Wilmington, DE 19899

RICHARD G. FREEMAN
Attorney for Defendant

Date: January 16, 2007

CLERK US DIST COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,

    Plaintiff,

v.

TERESA M. FLOOD,

    Defendant.

Criminal Action No. 06- 125



REDACTED

### INDICTMENT

The Grand Jury for the District of Delaware charges that:

### COUNT ONE

*Introduction*

    At all times relevant to this Indictment, Wells Fargo Bank was a federally insured financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation or FDIC.

*Scheme to Defraud*

    2.    In or around the Fall of 2005, Wells Fargo Bank sent a credit offer to Genesis Investors Group at an office complex in Cinnaminson, New Jersey. Genesis Investors Group was a fictitious company that had been set up by G.C., III.

    3.    In or around November 2005, G.C., III, using the name and Social Security number of J.F. and the company name Genesis Investors Group, responded to the credit offer by applying for a $30,000 line of credit with Wells Fargo Bank.

    4.    Based on the application containing the false identity information, Wells Fargo



EXHIBIT A

Bank approved a $30,000 line of credit for J.F. of Genesis Investors Group at the Cinnaminson, New Jersey address.

5.  On or about January 17, 2006, a $15,000 check was written off the line of credit. On or about January 18, 2006, the $15,000 check was deposited into a bank account in Delaware held solely by Teresa M. Flood, the defendant, in the name Agape Ventures.

6.  On or about January 23, 2006, Teresa M. Flood, the defendant, used a portion of the money that had been deposited into the Agape Ventures bank account to pay the rent for the Cinnaminson, New Jersey office to which the original offer from Wells Fargo Bank had been sent. Within a month, all but a few hundred dollars of the money also was withdrawn from Teresa M. Flood's account via ATM withdrawals, checks, and check card purchases.

*Charging Paragraph*

7.  From in or around November 2005 through in or around February 2006, in the District of Delaware and elsewhere, G.C., III, aided and abetted by Teresa M. Flood, the defendant, did knowingly execute and attempt to execute a scheme and artifice to defraud Wells Fargo Bank, a federally insured financial institution, as described more fully in paragraphs 1 through 6 above, incorporated herein by reference, and in execution of the scheme, on or about January 17, 2006, a $15,000 check off a Wells Fargo Bank line of credit was deposited into the defendant's bank account, all in violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT TWO

8.  From in or around November 2005, through in or around January 2006, in the State and District of Delaware; G.C., III, aided and abetted by Teresa M. Flood, the defendant, did knowingly use, without lawful authority, a means of identification of J.F. during and in

2

T cou]

relation to a violation of the bank fraud statute, 18 U.S.C. § 1344, as described in paragraphs 1 through 7 above, incorporated herein by reference, all in violation of Title 18, United States Code, Sections 1028A and 2.

## COUNT THREE

*Scheme and Artifice to Defraud*

9. In or around February 2006, G.C., III, using the name "Michael Fuller" and the Social Security number of J.H., contacted Aggressive Mortgage in Maryland and inquired about obtaining a mortgage for a residential property in Delaware.

10. Sometime later in February 2006, G.C., III, using the name "Michael Fuller" and the Social Security number of J.H., went to Aggressive Mortgage and filled out a mortgage loan application. In connection with the application, the defendant submitted false identity information and false employment information.

11. Based on the information he had submitted, Aggressive Mortgage pre-qualified G.C., III as "Michael Fuller" with the Social Security number of J.H., for a $399,900 mortgage.

12. In or around March 2006, Teresa M. Flood, the defendant, called a real estate agent in Delaware and scheduled a time for herself and for G.C., III, using the name "Michael Fuller" and the Social Security number of J.H., to view residential properties. Also in or around March 2006, Teresa M. Flood, the defendant, and G.C., III met with a real estate agent in Delaware, viewed three residential properties that were listed for sale, and chose to purchase one of the properties.

13. On or about March 8, 2006, L.R. and G.C., III went to the office of the real estate

3

agent in Delaware. While at the office, G.C., III, using the name "Michael Fuller" and the Social Security number of J.H., signed an agreement of sale to purchase residential property for $399,900 and provided deposit for the property. The check for the deposit written off account held solely by Teresa M. Flood, the defendant, in the name T and T Enterprise.

14. During that same meeting, at G.C., III's request, Aggressive Mortgage sent via facsimile to the real estate agent's office letter stating that G.C., III, as "Michael Fuller", had been approved for purchase loan in the amount of $399,900.

15. The seller of the property accepted the offer and took the property off the market.

Charging Paragraph

16. On or about March 8, 2006, in the State and District of Delaware, having devised and intending to devise scheme and artifice to defraud, as described in paragraphs 9 through 5 above, incorporated herein by reference, and for the purpose of executing such scheme and artifice to defraud, G.C., III, aided and abetted by Teresa M. Flood, the defendant, did knowingly cause facsimile to be transmitted by means of wire in interstate commerce from the offices of Aggressive Mortgage in Maryland to the offices of ReMAX Metrostar in Delaware, in violation of Title 8, United States Code, Sections 1343 and ?

## COUNT FOUR

7. From in or around February 2006, through in or around March 2006, in the State and District of Delaware, G.C., III, aided and abetted by Teresa M. Flood, the defendant, did knowingly use, without lawful authority, means of identification of J.H. during and in relation to violation of the wire fraud statute, 8 U.S.C. § 343, as described in paragraphs 9 through 16

above, incorporated herein by reference, all in violation of Title 18, United States Code, Sections 1028A and 2.

A TRUE BILL:

_____
Foreperson

COLM F. CONNOLLY
United States Attorney

BY: _____
Beth Moskow-Schnoll
Assistant United States Attorney

Dated: in or around November 16, 2006

5

## AFFIDAVIT OF SPECIAL AGENT ANDREW BALCENIUK

I, Andrew Balceniuk, being duly sworn, depose and say:

1. Your affiant is a Special Agent with the U.S. Secret Service and has been so employed since October 2002. Your affiant is currently assigned to the Wilmington, Delaware Resident Office. Your affiant has received approximately six months of field and classroom training in the identification and investigation of various schemes perpetrated to commit identity theft and other crimes.

2. This affidavit is submitted in support of a criminal complaint and warrant charging Lisa Reed and Teresa M. Flood with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343, all in violation of 18 U.S.C. § 371. The allegations set forth in this affidavit are based upon my personal knowledge, as well as upon information obtained from law enforcement officers, investigators, complaints, witnesses, public records and other parties and sources. This affidavit does not contain all information obtained in the course of the investigation, as it details only a sampling of the fraudulent activity engaged in by Reed and Flood - a sampling that, your affiant submits, is sufficient to establish probable cause to arrest both women.

3. Sometime in February 2006, Glenny Coleman, III, using the name "Michael Fuller" and a Social Security number belonging to another person, contacted Aggressive Mortgage in Maryland and inquired about obtaining a mortgage for a residential property in Delaware.

4. Sometime later in February 2006, Glenny Coleman, III, still using the name "Michael Fuller" and a Social Security number (SSN) belonging to J.H., went to Aggressive Mortgage and filled out a mortgage loan application. In connection with the application, the defendant submitted, *inter alia*, false identity information and false employment information. Based on the information he had submitted, Aggressive Mortgage pre-qualified "Michael Fuller" for a $399,900 mortgage.

5. Sometime in or around March 2006, a ReMAX agent in Delaware received a phone call from a woman identifying herself as "Teresa Marie" who made an appointment to see some houses. Soon after, Teresa Marie and a man identifying himself as "Michael Fuller" met with the real estate agent. When the agent asked Teresa Marie her last name, Teresa Marie told her to just call her "Teresa Marie." "Michael Fuller" stated that Teresa Marie was his business partner. The real estate agent showed Teresa Marie and Fuller three homes. The couple was most interested in a home in Emerald Ridge, Bear that had a list price of $399,900. The description of Teresa Marie provided by the real estate agent matches the description of Teresa M. Flood.

6. On March 8, 2006, "Fuller", accompanied by a woman meeting Lisa Reed's description, met with the ReMax agent in Delaware. During the meeting, with Lisa Reed by his side, "Fuller" entered into an agreement to purchase the home in Emerald Ridge for $399,900 and provided a $1,000 check as a good faith deposit. The check was written off a Commerce bank account held in the name T and T Enterprise Inc. with an address in Greenville, Delaware.



CLERK US DIST COURT

7.  The Greenville address comes back to a mail drop opened in the name T and T Enterprise by Teresa M. Flood, who described herself as "president" of T and T Enterprise on the application. Also on the application, Teresa M. Flood listed "Michael Fuller" as one of the persons authorized to receive mail at the box.

8.  During the meeting on March 8, 2006, "Fuller" asked if he could use his lender for settlement and have the settlement in Maryland. The ReMax agent said that would be fine, so, during the meeting, "Fuller" had Aggressive Mortgage in Baltimore fax an approval letter to the ReMax agent in Delaware.

9.  Soon after, the seller accepted the offer, and the home was taken off the market. Glenny Coleman, III was arrested later that month, so the transfer of the property did not occur.

10. On March 23, 2006, Detective Sue Jones of the Delaware State Police showed the ReMax agent a photographic line-up of six men and asked whether any of them was the man the agent knew as Michael Fuller. The real estate agent quickly picked the photo of Glenny Coleman. Detective Jones also showed the real estate agent a photographic array of six women and asked whether any of them was the woman who accompanied Michael Fuller when he signed the paperwork. The real estate agent chose the photo of Lisa Reed without hesitation.

11. Detective Jones also interviewed Susan Kee of Aggressive Mortgage in Baltimore. Kee said when Fuller contacted her he presented himself as an established businessman who wanted to purchase a home for his fiancée, Lisa Reed. On February 15, 2006, Fuller came to Kee's office and filled out a mortgage application. Later in February, Fuller provided Kee with a copy of his Delaware driver's license, PNC bank records, pay stubs and income tax returns. Detective Jones showed Kee a photographic array and asked whether any of the men was the man whom Kee knew as Michael Fuller. Kee positively identified Coleman.

12. Kee provided a copy of the documentation submitted by Coleman. The Delaware driver's license in the name Michael Fuller bears a photo of Coleman. In each of the three applications he submitted to Aggressive Mortgage, Coleman used the name Michael Fuller and a SSN belonging to J.H. He also gave a false address - an address belonging to V.D., Lisa Reed's cousin. Coleman, as Fuller, claimed to be employed as an "investing manager" by Genesis Investing Group at 101 Route 130, Clementon, NJ. In support of the application, Coleman, as Fuller, submitted a fraudulent W-2 and a fraudulent tax return showing that he had earned $116,400 from Genesis Investment Group, 101 Route 130 South, Cinnaminson, NJ in 2005. He also submitted statements for a PNC bank account supposedly held in the name Michael Fuller.

13. Investigation by your affiant and the Delaware State Police determined that an office was rented by Glenny Coleman, again using the name of V.D., Lisa Reed's cousin, for "TAFC Receivables" at the Cinnaminson address. The check used to rent the office space, was a PNC Bank cashier's check in the amount of $2,100 with a notation stating, "Remitter Teresa Flood (Agape Ventures)." PNC Bank records revealed that Teresa M. Flood is the sole signatory on an account held in the name Agape Ventures which Flood opened in October 2005. A review of the Agape Ventures account statement for the period 12/31/05 to 1/31/06 shows that on January 23,

CLERK US DIST COURT

2006, $2,110 was withdrawn for the purchase of a cashier's check. (The extra $10 likely was to pay a fee for the issuance of the cashier's check.) A comparison of the Agape Ventures bank statement with the Michael Fuller bank statement submitted by Coleman (as Michael Fuller) in support of his mortgage application with Aggressive Mortgage, shows that, except for the name of the accountholder, the two bank statements are identical. In an interview with the Delaware State Police and your affiant, the manager for the office building stated that in setting up the office space for TAFC, he dealt with a woman who identified herself only as "Teresa Marie."

14.   On August 18, 2006, Detective Nancy Skubik, Delaware State Police, and your affiant interviewed Teresa M. Flood at Delaware State Police Troop Two in Bear, Delaware. Flood stated that she met Glenny Coleman in the fall of 2003 and had a personal relationship with him resulting in the birth of a daughter. Flood stated that she started Agape Ventures in approximately 2005 and that she was the only employee of the company. Flood also stated that she opened the PNC bank account in 2005 for her personal use and that she was the only person to have access to the account. Flood was shown a copy of the PNC Bank cashier's check and admitted that the check was used to rent the office space in Cinnaminson.

15.   Pursuant to a search warrant, the Delaware State Police searched Lisa Reed's home in Wilmington, Delaware on March 23, 2006. The police found many items of interest during the search, including two blank checks with the names "Genesis Investors Group/Michael Fuller" listed as the payors in the top left corner and "Mellon Bank" listed as the financial institution holding the account. No such account exists in that name. In fact, according to Mellon Bank's own website, in 2001, Mellon Bank sold its mid-Atlantic banking operations to Citizens Bank.

16.   During the same search of Lisa Reed's home, the Delaware State Police also found a "Merchant Application" in which "Optimum Entertainment," owned by "Michael Fuller" with J.H.'s SSN and V.D.'s address, is applying to Bank Card Depot for authorization to accept credit cards. Records received from EVO Merchant Services show that during the relevant time period, Lisa Reed was authorized by Bank Card Depot to sell its merchant credit card services to businesses.

CLERK US DIST COURT

      Based on my training and experience and the foregoing facts, your affiant submits that there is probable cause to believe that Lisa Reed and Teresa M. Flood conspired to commit wire fraud in violation of 18 U.S.C. § 1343, all in violation of 18 U.S.C. § 371. Therefore, your affiant respectfully requests that warrants be issued for the arrest of Lisa Reed and Teresa M. Flood.

Andrew Balceniuk
Special Agent, U.S. Secret Service

**SWORN AND SUBSCRIBED TO**

this _3_ day of November, 2006.

Honorable Mary Pat Thynge
United States Magistrate Judge