THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

United States of America              : CR. O6-125 (SLR)

v.

Theresa M. Flood

## ORDER

And NOW this          day of          , 2007, upon consideration of the Motion to Suppress of defendant Theresa M. Flood and any response thereto it is hereby ORDERED and DECREED that said the relief sought by means of said motion is GRANTED. It is further ORDERED and DECREED that the government is prohibited and enjoined from introducing into evidence any and all statements given by the defendant to agents of the government before or after her arrest.

A hearing is scheduled on the within motion for the   day of   ,2007 in Courtroom    of the United States Courthouse, Wilmington, DE.

_____
ROBINSON, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

United States of America            : CR. O6-125 (SLR)

v.

Theresa M. Flood

DEFENDANT'S PRETRIAL MOTION TO SUPPRESS
ANY AND ALL STATEMENTS GIVEN TO AGENTS
OF THE GOVERNMENT

TO THE HONORABLE SUE L. ROBINSON:

Defendant, Theresa M. Flood, by her attorney, Richard G. Freeman, Esquire, hereby moves that this Honorable Court issue an order suppressing all statements the defendant gave to agents of the government at any prior to and after her arrest and in support thereof respectfully represents:

. The defendant, a 40-year old woman and single mother with no prior criminal record , was accused in a four-count indictment filed on November 16, 2006 of violating 18 U.S.C. §§ 1344 and 1342 charging bank fraud; 18 U.S.C. §§ 1028A and 2 charging identity theft and 18 U.S.C. § 1343 charging wire fraud.

2. The foregoing charges all arise from the actions of Glenny Coleman, a man who has pleaded guilty to federal crimes in

connection with 1) stealing the identities of three persons, 2) depositing a forged check in the name of one of his stolen identities into a legitimate bank account maintained by the defendant herein, and 3) using the defendant's bank account further to write a phony check to make a down payment on a home Mr. Coleman was buying for himself and a third person, Lisa Reed. Whom he identified as his fiancée. The indictment relates that the defendant made phone calls and accompanied Mr. Coleman while he looked at two homes. (See indictment attached hereto as Exhibit "A" and its contents incorporated herein).

3  Prior to defendant's indictment but after her arrest on a warrant she was questioned by police from Delaware in the company of Agent Andrew Balceniuk of the United States Secret Service. By means of her statement she admitted that she knew Glenny Coleman ; she also acknowledged that she "must have ..[deposited in her account]" a check the agents showed her and represented to her as having been deposited in her account. (See the statement attached hereto as exhibit "B" and its contents incorporated herein,

4. In an affidavit supporting the defendant's arrest agent Balceniuk set forth the government's basis—the probable cause—for the

defendant's arrest, essentially in the form later outlined by the indictment (see affidavit of agent Balceniuk attached hereto as Exhibit "C" its contents incorporated herein).

5. The entire basis of the government's probable cause to arrest Ms. Flood stems from the fact that certain checks Glenny Coleman wrote in the names of others were on her account; the government did not establish *prearrest* and before taking her statement that the defendant knew or had reason to know that the checks were in the names of persons who either didn't exist or did not know their names were being used.

WHEREFORE, the defendant by her counsel respectfully requests that this Honorable Court issue an order holding that the defendant's arrest was not based upon probable cause and as a result her statement was tainted by the lack of probable cause and the government is enjoined and prohibited from introducing her statement for any purpose in the trial of her case.

Respectfully submitted,

RICHARD G. FREEMAN
Attorney for Defendant

Date: January 16, 2007

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

United States of America    : CR. O6-125 (SLR)

 v.

Theresa M. Flood

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S PRETRIAL MOTION TO SUPPRESS
ANY AND ALL STATEMENTS GIVEN TO
AGENTS OF THE GOVERNMENT

TO THE HONORABLE SUE L. ROBINSON:

 The Defendant has moved to suppress any and all statements she gave government agents. Because the defendant is a 40-year old single mother with a college education and a substantial record of employment but no criminal record voluntariness of her statement is *not* an issue, However, the defendant *does* take issue with the government's claimed basis for taking the statement. Plainly, there was no probable cause.

 In deciding whether the district court erred by admitting the defendant s statement this Court must ask two questions. First, it must ask whether the authorities had probable cause to arrest Ms. Flood for bank fraud, wire fraud and identity theft. Second, it must ask whether, assuming the authorities lacked probable cause, the statement should have been

excluded as the fruit of a poisonous tree, or whether some intervening event had purged the taint of the improper arrest thereby rendering the statement admissible. *See Taylor v. Alabama, 457 U.S. 687 (1982)*

The question whether authorities has probable cause to arrest Ms. Flood turns on whether, at the moment the arrest was made, the officers had probable cause to make it-whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense. *Beck v. Ohio, 379 U.S. 89 (1964)*. In the instant case, at the time of the arrests all that the Delaware police and Secret Service knew about Ms. Flood was that she had a bank account, another person had deposited bogus checks into that account, that she had used the account and that she arranged to see and did see three homes with the other person. The other person, Glenny Coleman, later used a credit line he obtained with a false identity to obtain a mortgage under that identity but without the Ms. Flood's participation. Does this conduct make Ms. Flood an aider and abettor (conspiracy is not charged) or merely an instrument of Mr. Coleman's duplicity? The defendant submits that the latter is the more plausible theory even at this stage—the probable cause inquiry: there was no probable cause

based on this innocent, uninvolved conduct. Yes, a crime had been committed; but the second prong of the timeless analysis was missing: there was scant if any information to warrant a prudent person to believe this defendant was involved in the offense.

If anything the presence in the government's accusatory scenario of Ms. Flood and her checking account could lead the factfinder to conclude only that she was merely present at marginal sites of Mr. Coleman's criminality. Mere presence at a given location cannot in and of itself constitute probable cause to arrest. As the United States Supreme Court observed in *Ybarra v. Illinois*, *444 U.S. 85, 90 (1979)*:

[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be. The Fourth and Fourteenth Amendments protect the "legitimate expectations of privacy" of persons, not places.*444 U.S. at 91* (citations deleted). Thus, Ms. Flood's mere presence as the owner of the checking

account and at the house tour could not have constituted probable cause to arrest.

Having concluded that Ms. Flood was arrested without probable cause, the Court must then decide whether the statement obtained from her should have been excluded as the fruit of a poisonous tree or whether the taint of the illegal arrest had been purged by some intervening event.  The Supreme Court spoke to this issue in *Taylor v. Alabama, 457 U.S. 687 (1982)*

"In *Brown v. Illinois*, 422 U.S. 590 (1975), and *Dunaway v. New York, 442 U.S. 200 (1979)* ], the police arrested suspects without probable cause.  The suspects were transported to police headquarters, advised of their *Miranda* rights, and interrogated.  They confessed within two hours of their arrest.  This Court held that the confessions were not admissible at trial, reasoning that a confession obtained through custodial interrogation after an illegal arrest should be excluded unless intervening events break the causal connection between the illegal arrest and the confession so that the confession is " 'sufficiently an act of free will to purge the primary taint.' " *Brown v. Illinois, 422 U.S. at 602* (quoting *Wong Sun v. United States , 371 U.S. 471 (1963)*  The Court identified several factors that should be considered in determining whether a confession has been purged of the taint

of the illegal arrest: "the temporal proximity of the arrest and the confession, the presence of intervening circumstances, ... and, particularly, the purpose and flagrancy of the official misconduct." *Brown v. Illinois,* 422 U.S. at 603   The State bears the burden of proving that a statement it characterizes as aconfession is admissible. *Ibid.* See also In *Florida v. Royer,* 460 U.S.491 (1983).

Applying the rule of *Taylor* to the instant case, this Court should find that the Government failed to carry its burden of proving that the taint of Ms. Flood's illegal arrest had been purged prior to the time of her statement. She gave this statement but a few hours after she was taken into custody on the basis of the suspicious checks.  Nowhere could the Government suggest that any meaningful event occurred within those few hours which could have purged the taint of an illegal arrest.  At the time that the police arrested her  they knew absolutely nothing about her except that she had a bank account through which some suspicious checks passed.  Could she not fit the role of victim better than that of suspect? Although Ms. Flood's subsequent statement may have been voluntary for Fifth Amendment purposes "in the sense that *Miranda* warnings were given and understood, [this] is not by itself sufficient to purge the taint of the illegal arrest." *Taylor v. Alabama , supra*  Such a finding of voluntariness "is merely a threshold

requirement for the Fourth Amendment analysis." *Taylor v. Alabama, supra*  Her statement should be excluded for all purposes at trial.

## CONCLUSION

For the reasons set forth in the within motion and memorandum the defendant respectfully requests this Honorable Court issue an order holding that the defendant's arrest was not based upon probable cause and as a result her statement was tainted by the lack of probable cause and the government is enjoined and prohibited from introducing her statement for any purpose in the trial of her case.

Respectfully submitted,

_____
RICHARD G. FREEMAN
Attorney for Defendant

Date: January 16, 2007

## CERTIFICATE OF SERVICE

I hereby certify that I have today served a copy of the within Motion to Suppress upon the following person by electronic transmission:

Beth Moskow-Schnall, Esquire
Assistant United States Attorney
1007 Orange street, 7th floor
Wilmington, DE 19899

/RICHARD G. FREEMAN
Attorney for Defendant

Date: January 16, 2007

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE



UNITED STATES OF AMERICA,

        Plaintiff,

TERESA M. FLOOD,

        Defendant.

Criminal Action No. 06-125



## INDICTMENT

The Grand Jury for the District of Delaware charges that:

### COUNT ONE

*Introduction*

1. At all times relevant to this Indictment, Wells Fargo Bank was a federally insured financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation or FDIC.

*Scheme to Defraud*

2. In or around the Fall of 2005, Wells Fargo Bank sent a credit offer to Genesis Investors Group at an office complex in Cinnaminson, New Jersey. Genesis Investors Group was a fictitious company that had been set up by G.C., III.

3. In or around November 2005, G.C., III, using the name and Social Security number of J.F. and the company name Genesis Investors Group, responded to the credit offer by applying for a $30,000 line of credit with Wells Fargo Bank.

4. Based on the application containing the false identity information, Wells Fargo



Bank approved a $30,000 line of credit for J.F. of Genesis Investors Group at the Cinnaminson, New Jersey address.

5.  On or about January 17, 2006, a $15,000 check was written off the line of credit. On or about January 18, 2006, the $15,000 check was deposited into a bank account in Delaware held solely by Teresa M. Flood, the defendant, in the name Agape Ventures.

6.  On or about January 23, 2006, Teresa M. Flood, the defendant, used a portion of the money that had been deposited into the Agape Ventures bank account to pay the rent for the Cinnaminson, New Jersey office to which the original offer from Wells Fargo Bank had been sent. Within a month, all but a few hundred dollars of the money also was withdrawn from Teresa M. Flood's account via ATM withdrawals, checks, and check card purchases.

*Charging Paragraph*

7.  From in or around November 2005 through in or around February 2006, in the District of Delaware and elsewhere, G.C., III, aided and abetted by Teresa M. Flood, the defendant, did knowingly execute and attempt to execute a scheme and artifice to defraud Wells Fargo Bank, a federally insured financial institution, as described more fully in paragraphs 1 through 6 above, incorporated herein by reference, and in execution of the scheme, on or about January 17, 2006, a $15,000 check off a Wells Fargo Bank line of credit was deposited into the defendant's bank account, all in violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT TWO

8.  From in or around November 2005, through in or around January 2006, in the State and District of Delaware, G.C., III, aided and abetted by Teresa M. Flood, the defendant, did knowingly use, without lawful authority, a means of identification of J.F. during and in

2

relation to a violation of the bank fraud statute, 18 U.S.C. § 1344, as described in paragraphs 1 through 7 above, incorporated herein by reference, all in violation of Title 18, United States Code, Sections 1028A and 2.

## COUNT THREE

*Scheme and Artifice to Defraud*

9. In or around February 2006, G.C., III, using the name "Michael Fuller" and the Social Security number of J.H., contacted Aggressive Mortgage in Maryland and inquired about obtaining a mortgage for a residential property in Delaware.

10. Sometime later in February 2006, G.C., III, using the name "Michael Fuller" and the Social Security number of J.H., went to Aggressive Mortgage and filled out a mortgage loan application. In connection with the application, the defendant submitted false identity information and false employment information.

11. Based on the information he had submitted, Aggressive Mortgage pre-qualified G.C., III as "Michael Fuller" with the Social Security number of J.H., for a $399,900 mortgage.

12. In or around March 2006, Teresa M. Flood, the defendant, called a real estate agent in Delaware and scheduled a time for herself and for G.C., III, using the name "Michael Fuller" and the Social Security number of J.H., to view residential properties. Also in or around March 2006, Teresa M. Flood, the defendant, and G.C., III met with a real estate agent in Delaware, viewed three residential properties that were listed for sale, and chose to purchase one of the properties.

13. On or about March 8, 2006, L.R. and G.C., III went to the office of the real estate

3

agent in Delaware. While at the office, G.C., III, using the name "Michael Fuller" and the Social Security number of J.H., signed an agreement of sale to purchase residential property for $399,900 and provided deposit for the property. The check for the deposit written off account held solely by Teresa M. Flood, the defendant, in the name and T Enterprise.

4. During that same meeting, at G.C. III' request, Aggressive Mortgage sent via facsimile to the real estate agent' office letter stating that G C III, as "Michael Fuller", had been approved for purchase loan in the amount of $399,900.

The seller of the property accepted the offer and took the property off the market.

*Charging Paragraph*

On or about March 8, 2006, in the State and District of Delaware, having devised and intending to devise scheme and artifice to defraud, as described in paragraphs through above, incorporated herein by reference, and for the purpose of executing such scheme and artifice to defraud G C. III, aided and abetted by Teresa M. Flood, the defendant, did knowingly facsimile to be transmitted by means of in interstate from the offices of Aggressive Mortgage in Maryland to the offices of ReMAX Metrostar in Delaware, all in violation Title 8, United States Code, Sections 1343 and

### COUNT FOUR

From or around February 2006 through in or around March 2006, the State and District of Delaware, G.C., III, aided and abetted by Teresa M. Flood, the defendant, did knowingly use, without lawful authority means of identification of J.H. during and relation to violation of the wire fraud statute, U. .C. 343, as described in paragraphs through

above, incorporated herein by reference, all in violation of Title 18, United States Code, Sections 1028A and 2.

A TRUE BILL:

_____
Foreperson

COLM F. CONNOLLY
United States Attorney

BY: _____
Beth Moskow-Schnoll
Assistant United States Attorney

Dated: in or around November 16, 2006

5

## Investigative Narrative

On 081806, at approximately 1345 hours, State Detectives transported D- Teresa Flood to troop 2 for a pending warrant. At approximately 1448 hours, Secret Service Agent A. Balceniuk began the interview. At that time, she was of her Miranda Rights and signed that she understood these rights and waived them.   SSA Balceniuk and I signed the warning form.  She stated her full name as Teresa Marie Flood, ▇▇▇▇▇▇▇, and that she was currently staying with family members and her parents at ▇▇▇▇▇▇▇.  She said that she had lived in Delaware at ▇▇▇▇▇s, ▇▇▇▇▇r, but moved from there in 2003 or 2004.  She said that when she lived in Delaware she worked for a company named Square D. Company as an assistant.  She stated that prior to that she worked at FMC which specialized in robotic systems which she helped design.  She advised that she attended University of Pennsylvania for four years but she did not obtain a degree.  She was studying electrical engineering.   She said that most recently she has been working as a tutor at Sky Learning and doing consulting.  She said that when she lived in Delaware she had a consulting business.

D- Flood advised that she met ▇▇▇▇▇▇▇ in the fall of 2003 through her cousin ▇▇▇▇▇. She said she was living at the Naamans Apts. at the time and he was living with his mother in north Wilmington.  She stated that it was a personal relationship and that they were never in business together.

D- Flood stated that she had opened Agape Ventures in approximately 2005.  She said that she was the only employee of the company and that she did consulting for education, engineering and entertainment.  She also said that she opened T & T Enterprises which involved telecommunication Both of these business were run out of her home.

D- Flood advised that she opened P.O. Boxes at the Talleyville Post Office (on Concord Pike in Wilmington) and in a UPS Store on Kennett Pike, Wilmington.   She advised that the Talleyville box received mail for Agape Ventures, T & T, and Teresa Flood.  She stated that a client named John Carr had a key to that mail box for a couple months, but no one else had access to that box. The Kennett Pike box received mail for T & T and Agape Ventures.

D- Flood stated that she opened the PNC account in 2005 for herself.  She stated that she listed both mailboxes on her account information.  She advised that she was the only person to have access to that account.

She was shown a copy of the ▇▇▇▇▇▇▇ check that was deposited into that PNC account and the deposit slip.  She said "if it went in my account, I must have done it."  She advised that the check came from a consulting job that a friend of hers had set up.  She advised that she never met Ronald Fagan and did not end up doing work for him.  When asked where she got the check from she said she got it from that friend.

When D- Flood was shown a copy of the Cashier's Check from PNC Bank to Marmaco Management, LLC. The memo line reads "TERESA FLOOD (AGAPE VENTURES)."  She said it was to rent office space.  When asked who she was renting office space for, she became quiet then stated she wanted to speak to her attorney.  The interview ended at approximately 1519 hours.

**EXHIBIT**

Flood was fingerprinted and photographed.  Judge Hudson of JP CT 2 completed the arraignment and set bail at $1000.00 unsecured.  She was released from the troop with a date to appear in CCP.

| Reporting Officer | Supervisor Approval |
|---|---|
| T SKUBIK  - 42752 002 | SUSAN L JONES PSPT713 Date 08/28/2006 1310 |

## AFFIDAVIT OF SPECIAL AGENT ANDREW BALCENIUK

I, Andrew Balceniuk, being duly sworn, depose and say:

1.  Your affiant is a Special Agent with the U.S. Secret Service and has been so employed since October 2002. Your affiant is currently assigned to the Wilmington, Delaware Resident Office. Your affiant has received approximately six months of field and classroom training in the identification and investigation of various schemes perpetrated to commit identity theft and other crimes.

2.  This affidavit is submitted in support of a criminal complaint and warrant charging Lisa Reed and Teresa M. Flood with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343, all in violation of 18 U.S.C. § 371. The allegations set forth in this affidavit are based upon my personal knowledge, as well as upon information obtained from law enforcement officers, investigators, complaints, witnesses, public records and other parties and sources. This affidavit does not contain all information obtained in the course of the investigation, as it details only a sampling of the fraudulent activity engaged in by Reed and Flood - a sampling that, your affiant submits, is sufficient to establish probable cause to arrest both women.

3.  Sometime in February 2006, Glenny Coleman, III, using the name "Michael Fuller" and a Social Security number belonging to another person, contacted Aggressive Mortgage in Maryland and inquired about obtaining a mortgage for a residential property in Delaware.

4.  Sometime later in February 2006, Glenny Coleman, III, still using the name "Michael Fuller" and a Social Security number (SSN) belonging to J.H., went to Aggressive Mortgage and filled out a mortgage loan application. In connection with the application, the defendant submitted, *inter alia*, false identity information and false employment information. Based on the information he had submitted, Aggressive Mortgage pre-qualified "Michael Fuller" for a $399,900 mortgage.

5.  Sometime in or around March 2006, a ReMAX agent in Delaware received a phone call from a woman identifying herself as "Teresa Marie" who made an appointment to see some houses. Soon after, Teresa Marie and a man identifying himself as "Michael Fuller" met with the real estate agent. When the agent asked Teresa Marie her last name, Teresa Marie told her to just call her "Teresa Marie." "Michael Fuller" stated that Teresa Marie was his business partner. The real estate agent showed Teresa Marie and Fuller three homes. The couple was most interested in a home in Emerald Ridge, Bear that had a list price of $399,900. The description of Teresa Marie provided by the real estate agent matches the description of Teresa M. Flood.

6.  On March 8, 2006, "Fuller", accompanied by a woman meeting Lisa Reed's description, met with the ReMax agent in Delaware. During the meeting, with Lisa Reed by his side, "Fuller" entered into an agreement to purchase the home in Emerald Ridge for $399,900 and provided a $1,000 check as a good faith deposit. The check was written off a Commerce bank account held in the name T and T Enterprise Inc. with an address in Greenville, Delaware.


EXHIBIT C

7.   The Greenville address comes back to a mail drop opened in the name T and T Enterprise by Teresa M. Flood, who described herself as "president" of T and T Enterprise on the application. Also on the application, Teresa M. Flood listed "Michael Fuller" as one of the persons authorized to receive mail at the box.

8.   During the meeting on March 8, 2006, "Fuller" asked if he could use his lender for settlement and have the settlement in Maryland. The ReMax agent said that would be fine, so, during the meeting, "Fuller" had Aggressive Mortgage in Baltimore fax an approval letter to the ReMax agent in Delaware.

9.   Soon after, the seller accepted the offer, and the home was taken off the market. Glenny Coleman, III was arrested later that month, so the transfer of the property did not occur.

10.  On March 23, 2006, Detective Sue Jones of the Delaware State Police showed the ReMax agent a photographic line-up of six men and asked whether any of them was the man the agent knew as Michael Fuller. The real estate agent quickly picked the photo of Glenny Coleman. Detective Jones also showed the real estate agent a photographic array of six women and asked whether any of them was the woman who accompanied Michael Fuller when he signed the paperwork. The real estate agent chose the photo of Lisa Reed without hesitation.

11.  Detective Jones also interviewed Susan Kee of Aggressive Mortgage in Baltimore. Kee said when Fuller contacted her he presented himself as an established businessman who wanted to purchase a home for his fiancée, Lisa Reed. On February 15, 2006, Fuller came to Kee's office and filled out a mortgage application. Later in February, Fuller provided Kee with a copy of his Delaware driver's license, PNC bank records, pay stubs and income tax returns. Detective Jones showed Kee a photographic array and asked whether any of the men was the man whom Kee knew as Michael Fuller. Kee positively identified Coleman.

12.  Kee provided a copy of the documentation submitted by Coleman. The Delaware driver's license in the name Michael Fuller bears a photo of Coleman. In each of the three applications he submitted to Aggressive Mortgage, Coleman used the name Michael Fuller and a SSN belonging to J.H. He also gave a false address - an address belonging to V.D., Lisa Reed's cousin. Coleman, as Fuller, claimed to be employed as an "investing manager" by Genesis Investing Group at 101 Route 130, Clementon, NJ. In support of the application, Coleman, as Fuller, submitted a fraudulent W-2 and a fraudulent tax return showing that he had earned $116,400 from Genesis Investment Group, 101 Route 130 South, Cinnaminson, NJ in 2005. He also submitted statements for a PNC bank account supposedly held in the name Michael Fuller.

13.  Investigation by your affiant and the Delaware State Police determined that an office was rented by Glenny Coleman, again using the name of V.D., Lisa Reed's cousin, for "TAFC Receivables" at the Cinnaminson address. The check used to rent the office space, was a PNC Bank cashier's check in the amount of $2,100 with a notation stating, "Remitter Teresa Flood (Agape Ventures)." PNC Bank records revealed that Teresa M. Flood is the sole signatory on an account held in the name Agape Ventures which Flood opened in October 2005. A review of the Agape Ventures account statement for the period 12/31/05 to 1/31/06 shows that on January 23,

2006, $2,110 was withdrawn for the purchase of a cashier's check. (The extra $10 likely was to pay a fee for the issuance of the cashier's check.) A comparison of the Agape Ventures bank statement with the Michael Fuller bank statement submitted by Coleman (as Michael Fuller) in support of his mortgage application with Aggressive Mortgage, shows that, except for the name of the accountholder, the two bank statements are identical. In an interview with the Delaware State Police and your affiant, the manager for the office building stated that in setting up the office space for TAFC, he dealt with a woman who identified herself only as "Teresa Marie."

14.  On August 18, 2006, Detective Nancy Skubik, Delaware State Police, and your affiant interviewed Teresa M. Flood at Delaware State Police Troop Two in Bear, Delaware. Flood stated that she met Glenny Coleman in the fall of 2003 and had a personal relationship with him resulting in the birth of a daughter. Flood stated that she started Agape Ventures in approximately 2005 and that she was the only employee of the company. Flood also stated that she opened the PNC bank account in 2005 for her personal use and that she was the only person to have access to the account. Flood was shown a copy of the PNC Bank cashier's check and admitted that the check was used to rent the office space in Cinnaminson.

15.  Pursuant to a search warrant, the Delaware State Police searched Lisa Reed's home in Wilmington, Delaware on March 23, 2006. The police found many items of interest during the search, including two blank checks with the names "Genesis Investors Group/Michael Fuller" listed as the payors in the top left corner and "Mellon Bank" listed as the financial institution holding the account. No such account exists in that name. In fact, according to Mellon Bank's own website, in 2001, Mellon Bank sold its mid-Atlantic banking operations to Citizens Bank.

16.  During the same search of Lisa Reed's home, the Delaware State Police also found a "Merchant Application" in which "Optimum Entertainment," owned by "Michael Fuller" with J.H.'s SSN and V.D.'s address, is applying to Bank Card Depot for authorization to accept credit cards. Records received from EVO Merchant Services show that during the relevant time period, Lisa Reed was authorized by Bank Card Depot to sell its merchant credit card services to businesses.

/    /    /    /

Based on my training and experience and the foregoing facts, your affiant submits that there is probable cause to believe that Lisa Reed and Teresa M. Flood conspired to commit wire fraud in violation of 18 U.S.C. § 1343, all in violation of 18 U.S.C. § 371. Therefore, your affiant respectfully requests that warrants be issued for the arrest of Lisa Reed and Teresa M. Flood.

Andrew Balceniuk
Special Agent, U.S. Secret Service

**SWORN AND SUBSCRIBED TO**

this 3 day of November, 2006.

Honorable Mary Pat Thynge
United States Magistrate Judge