IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Crim. No. 06-125-SLR |
| | ) | |
| TERESA M. FLOOD, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

**I.    INTRODUCTION**

On November 16, 2006, a federal grand jury for the District of Delaware returned

a four count indictment charging defendant with bank fraud, identity theft and wire

fraud.  (D.I. 9)  On January 16, 2007, defendant moved to suppress statements and to

dismiss the indictment.  (D.I. 14, 15)  Oral argument on the motions was conducted on

April 10, 2007.  (D.I. 23)  The parties declined the opportunity to supplement the record

with additional briefing.[1]  The court has jurisdiction pursuant to 18 U.S.C. § 3231.

**II.    MOTION TO SUPPRESS**

Defendant was arrested pursuant to a warrant signed by a Delaware Justice of

the Peace on August 18, 2006.  (D.I. 24, GX1)  It is undisputed that defendant waived

her <u>Miranda</u> rights before being interviewed by Delaware State Police and United

States Secret Service Agent Andrew Balceniuk.  (D.I. 19, ex. C)  Defendant moves to

---

[1]Plaintiff did not file a response to defendant's motions.

suppress statements given during the interview, arguing that the arrest warrant lacked probable cause. (D.I. 14)

## A. The Arrest Warrant Affidavit

Delaware State Police Sergeant Susan L. Jones, a member of the financial crimes unit located in New Castle County, Delaware, signed the affidavit of probable cause for defendant's arrest ("arrest warrant affidavit").[2] (D.I. 24, GX1) The arrest warrant affidavit includes the following facts: The Delaware State Police were investigating a counterfeit check case involving several individuals, including defendant. A subpoena issued for bank records on a PNC account, opened by defendant as "AGAPE VENTURES, Inc.". PNC bank documents revealed that defendant deposited a check drawn on the Wachovia Account of Ronald Fagan in the amount of $1,950 on March 10, 2006. Neither the Ronald Fagan account nor the address associated therewith actually existed. After the funds from the check became available on March 13, 2006, defendant made four separate ATM withdrawals in the amount of $970 and several point of sale purchases. On March 15, 2006, the check was returned as a counterfeit check, resulting in a loss of $1,950 for PNC. Based on the affidavit, warrants for theft, 11 Del. C. § 841, and forgery second degree, 11 Del. C. § 861, were issued.[3]

---

[2] At oral argument, plaintiff introduced, without objection, the arrest warrant and arrest warrant affidavit. (GX1)

[3] 11 Del.C. § 841(a) provides, in part,: "A person is guilty of theft when the person takes, exercises, control over or obtains property of another person intending to deprive that person of it or appropriate it . . . ." 11 Del. C. § 861(a) provides: "A person is guilty of forgery when, intending to defraud, deceive or injure another person, or knowing that the person is facilitating a fraud or injury to be perpetrated by anyone, the

## B. Discussion

The Fourth Amendment of the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by [O]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. This requirement applies equally to arrest warrants as well as search warrants. Giordenello v. United States, 357 U.S. 480, 485-486 (1958). The threshold requirement for issuance of a warrant is probable cause. Illinois v. Gates, 462 U.S. 214, 236 (1983). Probable cause exists when a police officer makes an arrest pursuant to a warrant that meets the requirements of the Fourth Amendment. Baker v. McCollan, 443 U.S. 137, 144 (1979).

After a warrant has been issued and is challenged on the basis of probable cause, the reviewing court must determine whether the judicial officer had a substantial basis for finding probable cause. United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001); United States v. Ritter, 416 F.3d 256, 262 (3d Cir. 2005). The judicial officer's

---

person: (1) Alters any written instrument of another person without the other person's authority; or (2) Makes, completes, executes, authenticates, issues or transfers any written instrument which purports to be the act of another person, whether real or fictitious, who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case or to be a copy of an original when no original existed; or (3) Possesses a written instrument, knowing that it is made, completed or altered under circumstances constituting forgery." "Forgery is forgery in the second degree if the written instrument is or purports to be: (a) A deed, will, codicil, contract, release, assignment, commercial instrument, check or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status . . . ."

determination of probable cause is afforded great deference. United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents, 307 F.3d 137, 146 (3d Cir. 2002). The reviewing court should avoid "interpreting affidavit[s] in a hyper-technical, rather than commonsense manner." United States v. Jones, 994 F.2d 1051, 1055 (3d Cir. 1993). In so doing, the court should confine itself to the facts before the judicial officer and not consider information from other portions of the record. Hodge, 246 F.3d at 305. Close calls should be resolved in favor of upholding the warrant. Jones, 994 F.2d at 1055.

Considering the arrest warrant affidavit in light of this authority, the court finds there was a substantial basis for finding probable cause for the warrant to issue. Significantly, a factual foundation, supported by bank records, is outlined for violations of 11 Del. C. §§ 841 and 861. Defendant's contention that the arrest warrant affidavit lacks probable cause because it details legal rather than illegal conduct is an issue for trial to determine defendant's intent and is inconsequential to this analysis.[4]

## III.    MOTION TO DISMISS INDICTMENT

Defendant moves to dismiss the indictment on the basis that the conduct detailed in the indictment does not constitute a federal crime. Instead, she avers that the transactions were nothing more than "everyday, ordinary conduct" and that she is more victim than perpetrator. (D.I. 15)

### A. The Indictment

---

[4]Assuming arguendo that the arrest warrant were deficient, the statements would not be suppressed under the exclusionary rule because a reasonable officer, executing the warrant, could rely on it in a good faith belief in its propriety. United States v. Hodge, 246 F.3d 301 (3d Cir. 2001).

On November 16, 2006, a federal grand jury for the District of Delaware returned

a four count indictment charging defendant with: (1) bank fraud, 18 U.S.C. §§ 1344 ;

(2) identity theft, 18 U.S.C. §§ 1028A and 2; and (3) wire fraud, 18 U.S.C. § 1343.[5] (D.I.

9)   The indictment details a course of conduct involving defendant and Glenny

Coleman ("G.C.").[6]   Specifically as to bank fraud, count one provides that in the

---

[5]Bank fraud, 18 U.S.C. § 1344, provides, in pertinent part: Whoever knowingly executes, or attempts to execute, a scheme or artifice - (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years.

   Aggravated identity theft, 18 U.S.C. § 1028A, provides: "Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years."

   Fraud by wire, radio, or television, 18 U.S.C. § 1343, provides in part: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both . . . . ."

[6]For purposes of this motion, the court's review is limited to the indictment filed against defendant at bar. However, because defendant has repeatedly referenced another action pending before the court, United States v. Glenny Coleman, III, Crim. No. 06-089-SLR ("Coleman"), and the court concludes the circumstances surrounding that case are helpful for understanding the motions at bar, a brief review is appropriate. The indictment in Coleman references "T.F. (presumably Teresa Flood), an unindicted co-conspirator known to the grand jury as a person with whom the defendant had a close personal relationship." (Id. D.I. 6 ¶ 19) Defendant Coleman entered a plea of guilty on December 12, 2006. The plea agreement provides, in part, "Defendant Coleman and Dolena Grayson ran a counterfeit check scheme in which they supplied counterfeit checks to others who passed the counterfeit checks. In addition to supplying counterfeit checks, [Coleman] and Dolena Grayson also supplied false identification to the people who passed the counterfeit checks. [Coleman] received a portion of each counterfeit check that was passed." (Id. at D.I. 14 ¶ 3) Also, "in or around November 2005, using a name and social security number assigned to J.F.,

fall of 2005, Wells Fargo Bank, a federally insured financial institution, sent a credit

offer to Genesis Investors Group ("Genesis") at an office in Cinnaminson, New Jersey.

Genesis was a fictitious company set up by G.C. In November 2005, G.C. used the

social security number of J.F. and the company name Genesis to apply for a $30,000

line of credit from Wells Fargo Bank, which line of credit was approved.

On or about January 17, 2006, a $15,000 check was written off the credit line

and deposited into a Delaware bank account held solely by defendant in the name of

Agape Ventures. On or about January 23, 2006, defendant used a portion of the

deposited money to pay the rent for the Cinnaminson, New Jersey office - where the

offer from Wells Fargo Bank had been sent. Shortly thereafter, all but a few hundred

dollars of the money deposited was withdrawn from defendant's account.

Count two charges that, from November 2005 through January 2006, G.C., aided

by defendant, did knowingly use without authority the identification of J.F. in violation of

the bank fraud statute and identity theft statute.

---

[Coleman] applied for and was approved for a $30,000 line of credit from Wells Fargo
Bank, a federally insured financial institution. On or about January 17, 2006, [Coleman]
wrote a $15,000 check off the line of credit [from Wells Fargo bank] and had Teresa M.
Flood deposit the check into a bank account held by Teresa M. Flood in the name of
Agape Ventures; and in or around February 2006, [Coleman], using the name Michael
Fuller and a Social Security Number assigned to J.H., applied for, and was pre-
approved for a $399,900 mortgage. In or around March 2006, [Coleman] went with
Teresa M. Flood to look at three residential properties. [Coleman], as Michael Fuller,
and Teresa M. Flood chose a property valued at $399,900 to purchase. On or about
March 8, 2006, [Coleman] still using the name Michael Fuller and the Social Security
number assigned to J.H., signed an agreement of sale to purchase the previously
selected property. So that the sale could go forward, during the meeting, [Coleman]
had the mortgage company in Maryland send, via facsimile, to the real estate company
in Delaware, a letter stating that [Coleman] had been pre-approved for a purchase loan
in the amount of $399,900." (D.I. 14 ¶ 3)

6

Count three (wire fraud) charges that, in February 2006, G.C., using the name "Michael Fuller" and a social security number of J.H., contacted Aggressive Mortgage in Maryland about obtaining a mortgage for a residential property in Delaware. G.C. went to the Aggressive Mortgage office and filled out a mortgage loan application and submitted false identity and employment information. As a result, Aggressive Mortgage pre-qualified G.C. for a $399,900 mortgage. In March 2006, defendant called a real estate agent located in Delaware and scheduled showings of residential properties for her and G.C. Defendant, G.C., and a real estate agent viewed three properties and, subsequently, decided to purchase one of the properties. On March 8, 2006, G.C. and another individual went to the real estate office and G.C. signed an agreement of sale to purchase a residential property for $399,900 and provided a deposit for same. The check for deposit was written off an account held solely by defendant. Aggressive Mortgage faxed to the real estate office a letter stating that G.C. had been approved for a purchase loan in the amount of $399,900.

Count four charges aggravated identity theft and wire fraud based on conduct from February 2006 to March 2006, when G.C., aided and abetted by defendant, did knowingly use without lawful authority the identification of J.H. during and in relation to a violation of the wire fraud statute.

### B. Discussion

An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). An indictment must set forth each element of the crime charged. Almendarez-Torrez v. United States, 523 U.S. 224, 228 (1998). The standard for testing the sufficiency of an indictment is

whether the indictment contains the elements of the offense charged and fairly informs the defendant of the charge against which she must defend. United States v. Bailey, 444 U.S. 394 (1980).

In analyzing a motion to dismiss an indictment under Rule 12(b), the court must accept as true the facts alleged in the indictment to determine if those facts constitute a violation of the law under which a defendant is charged. United States v. Stewart, 955 F. Supp. 385, 386 (E.D. Pa 1997); United States v. Besmajian, 910 F.2d 1153, 1154 (3d Cir. 1990). If the facts alleged do not constitute a violation of federal law, the charges should be dismissed. Stewart, 955 F. Supp. 386; United States v. Panarella, 277 F.3d 678, 685 (3d Cir. 2002). However, such dismissals may not be predicated upon the insufficiency of the evidence to prove the indictment's charges. United States v. DeLaurentis, 230 F.3d 659, 660 (3d Cir. 2000). The sole function of a motion to dismiss is to test the sufficiency of the indictment to charge an offense and it is not a device for summary trial of evidence. United States v. Sampson, 371 U.S. 75, 83 (1962).

Comparing the indictment at bar against the statutes implicated, the court finds each of the counts sets forth adequate facts relating to the essential elements of the crimes charged with sufficient particularity. Whether defendant possessed the requisite intent is an issue of fact for the jury to decide at trial.

### C. Duplicitous and Multiplicitous

Defendant also argues the indictment should be dismissed as duplicitous and multiplicitous because the same several facts are used in an overlapping fashion to justify culpability for three separate offenses: bank fraud, wire fraud and identity theft.

8

Defendant contends that she is charged with committing two distinct acts, (1) permitting her checking account to be used for bogus checks and (2) facilitating the mortgage awarded G.C. on his false pretenses.  Requiring a jury to consider these acts as violations of three separate federal statutes would, according to defendant, "confuse them and result in a kaleidoscopic output of wrong-headed thinking and, possibly, wrong headed and unjust verdicts." (D.I. 15 at 9)

Duplicity is the "joining of two or more distinct offenses in a single count, so that a general verdict does not reveal exactly which crimes the jury found the defendant had committed." United States v. Gomberg, 715 F.2d 843, 845 (3d Cir. 1983) (overruled on other grounds, Garrett v. United States, 471 U.S. 773 (1985)).  A duplicitous indictment can also comprise a defendant's Sixth Amendment right to know the charges filed against him and create prejudicial evidentiary issues at trial. United States v. Hinton, 127 F. Supp.2d 548, 553 (D. N.J. 2000) (vacated and remanded for resentencing only, 65 Fed. Appx. 764 (3d Cir. 2003)).  In determining whether an indictment is duplicitous, the court's review is constrained and "the task is not to review the evidence . . . to determine whether it would support charging several crimes rather than just one, but rather to solely assess whether the indictment itself can be read to charge only one violation in each count." United States v. Sourlis, 953 F. Supp. 568, 572 (D. N.J. 1996).

Multiplicity is charging a single offense in different counts of an indictment; i.e., an indictment that charges a single offense in several counts is multiplicitous. Geberding v. United States, 471 F.2d 55, 58 (8th Cir. 1973).  Multiplicity may prejudice a defendant by resulting in multiple sentences for a single offense in violation of double jeopardy. United States v. Pollen, 978 F.2d 78, 85 (3d Cir. 1992).  However, the

9

Supreme Court has concluded that if "an act violates more than one criminal statute, the government may prosecute under either so long as it does not discriminate against any class of defendants." United States v. Batchelder, 442 U.S. 114, 123 -124 (1979). "It is not uncommon that federal criminal statutes partially overlap" allowing prosecutors to bring charges under either statute. Id.

In light of this authority, the court cannot conclude that the indictment is duplicitous or multiplicitous. The statutes charged require distinct conduct that is substantially tracked in the indictment. The indictment provides sufficient notice of the nature of the offenses charged and does not prejudice defendant.

## IV. CONCLUSION

At Wilmington this  5th  day of June, 2007,

IT IS ORDERED that defendant's motions are denied.

IT IS FURTHER ORDERED that a telephonic status conference is scheduled for **Monday, June 18, 2007** at **5:00 p.m.**, with the court initiating said call.

_____
United States District Judge