IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | NO. 06-125 |
| TERESA FLOOD | : | |

**DEFENDANT TERESA FLOOD'S REVISED MEMORANDUM OF LAW FOR MOTION FOR A JUDGMENT OF ACQUITTAL UNDER FED.R.CRIM. P. 29 AND FOR A NEW TRIAL UNDER FED.R.CRIM. P. 33**

**I. Introduction**

On December 4, 2008, defendant, Teresa Flood, by her attorney, Elayne C. Bryn, Esquire, filed a motion pursuant to Rule 29 and Rule 33 of the Federal Rules of Criminal Procedure, for a court order to set aside the verdict and enter a judgment of acquittal or in the alternative, grant a new trial. On February 29, 2008, defendant filed a memorandum of law in support of this motion. Defendant, hereby submits this revised memorandum to include additional cases and supplemental argument. In this memorandum, defendant does not raise additional issues.

On November 3, 2006, a Special Agent with the United States Secret Service swore a criminal complaint in the United States District Court, District of Delaware, before Magistrate Judge Mary Pat Thynge charging Teresa M. Flood conspiracy to commit wire fraud. Ms. Flood made an initial appearance before the Magistrate Judge on November 9, 2006, and was released on personal recognizance bond with restrictive conditions.

On November 16, 2006, Teresa Flood was charged in a four count criminal indictment with violating 18.U.S.C. §§ 1344 and 1342, bank fraud; 18.U.S.C.

§§ 1028 A and 2 charging identity theft and 18.U.S.C. §1343 charging wire fraud.

On September 18, 2007, the Government filed a Superseding Indictment charging Teresa Flood in a five count criminal indictment with violating 18.U.S.C. §§ 1344 and 1342, bank fraud; 18.U.S.C. §§ 1028 A and 2 charging identity theft, 18.U.S.C. §1343. Count I charged the defendant with committing wire fraud, sending false employment documents by fax to purchase of an Acura automobile. Count II charged that the defendant aided and abetted Glenny Coleman, III, in a scheme to defraud Wells Fargo Bank when a $15,000 check from a Wells Fargo Bank line of credit was deposited in the defendant's bank account. Count III charged that the defendant aided and abetted Glenny Coleman, III, concerning aggravated identity theft concerning Jeffrey Frank and Wells Fargo Mastercard. Count IV charged that the defendant aided and abetted Glenny Coleman in the commission of wire fraud concerning Michael Fuller and Jeffrey Hudak. Count V charged that the defendant aided and abetted Glenny Coleman, III, concerning the aggravated identity theft of Michael Fuller and Jeffrey Hudak

A jury trial in this matter began on November 26, 2007, before the Honorable Sue L. Robinson. On November 28, 2007, the juror returned a verdict of guilty on all counts.

**II. The evidence that the Government presented at trial was insufficient for the jury to find the defendant guilty of the crimes charged.**

Pursuant to Rule 29 defendant claims that the verdict was not supported by evidence sufficient to permit a rational trier of fact to find beyond a reasonable doubt that defendant committed wire fraud, sending false employment documents by fax to purchase of an Acura automobile, pursuant to Count I; that the that the defendant aided

2

and abetted Glenny Coleman, III, in a scheme to defraud Wells Fargo Bank when a $15,000 check from a Wells Fargo Bank line of credit was deposited in the defendant's bank account, pursuant to Count II; that the defendant aided and abetted Glenny Coleman, III, concerning aggravated identity theft concerning Jeffrey Frank and Wells Fargo Mastercard, pursuant to Count III; that the defendant aided and abetted Glenny Coleman in the commission of wire fraud concerning Michael Fuller and Jeffrey Hudak, pursuant to Count IV and that the defendant aided and abetted Glenny Coleman, III, concerning the aggravated identity theft of Michael Fuller and Jeffrey Hudak, pursuant to Count V.

Defendant Coleman entered a plea of guilty on December 12, 2006. The plea agreement provides, in part, "Defendant Coleman and Dolena Grayson ran a counterfeit check scheme in which they supplied counterfeit checks to others who passed the counterfeit checks. In addition to supplying counterfeit checks, [Coleman] and Dolena Grayson also supplied false identification to the people who passed the counterfeit checks. Coleman received a portion of each counterfeit check that was passed." Also, "in or around November 2005, using a name and social security number assigned to Jeffrey Frank, Coleman applied for and was approved for a $ 30,000 line of credit from Wells Fargo Bank, a federally insured financial institution. On or about January 17, 2006, Coleman wrote a $ 15,000 check off the line of credit from Wells Fargo bank and had Teresa M. Flood deposit the check into a bank account held by Teresa M. Flood in the name of Agape Ventures.

In February 2006, Coleman, using the name Michael Fuller and a Social

3

Security Number assigned to Jeffrey Hudak, applied for, and was pre-approved for a $399,900 mortgage. At trial, Veronica James Lewis testified that in March 2006, Coleman went with Teresa M. Flood to look at three residential properties. (N.T. 11/27/07, pp. 387-391) Coleman, as Michael Fuller later chose a property valued at $399,900 to purchase. On or about March 8, 2006, Coleman still using the name Michael Fuller and the Social Security number assigned to Jeffrey Hudak, signed an agreement of sale to purchase the previously selected property. 11/27/07, p. 401) So that the sale could go forward, during the meeting, Coleman had the mortgage company in Maryland send, via facsimile, to the real estate company in Delaware, a letter stating that Coleman had been pre-approved for a purchase loan in the amount of $ 399,900.

### A.  Standard of review sufficiency of the evidence.

Defendant challenges to the sufficiency of evidence supporting her conviction. A claim of insufficiency of the evidence places a very heavy burden on the appellant." *United States v. Leahy*, 445 F.3d 634, 657 (3d Cir. 2006) (quoting *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998)).  The Court must view the evidence in the light most favorable to the government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

In this case, the Government contends that defendant Flood is culpable for aiding and abetting Coleman in his various schemes to defraud Wells Fargo Bank and the Delaware real estate.18 U.S.C. § 2(a) imposes culpability as principal upon one who "aids, abets, counsels, commands, induces or procures" crime. To be guilty of aiding and abetting a crime, the Government must prove: (1) that the substantive crime has been

committed and (2) that the defendant knew of the crime and attempted to facilitate it. *United States v. Frorup*, 963 F.2d 41, 43 (3d Cir. 1992); *United States v. Waller*, 607 F.2d 49, 51-52 (3d Cir. 1979). There is simply no evidence that Ms. Flood knew the details knew of Coleman's schemes or Coleman's intent to commit a crime .

### B.  Bank Fraud

On or about January 17, 2006, a $ 15,000 check was written off the credit line and deposited into a Delaware bank account held solely by defendant in the name of Agape Ventures. On or about January 23, 2006, defendant used a portion of the deposited money to pay the rent for the Cinnaminson, New Jersey office - where the offer from Wells Fargo Bank had been sent. Shortly thereafter, all but a few hundred dollars of the money deposited was withdrawn from defendant's account.

Bank fraud, 18 U.S.C. § 1344, provides, in pertinent part: Whoever knowingly executes, or attempts to execute, a scheme or artifice - (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $ 1,000,000 or imprisoned not more than 30 years.

In *United States v. Thomas*, 315 F.3d 190 (3d Cir. 2002), the Third Circuit held that specific intent is required to prove bank fraud under both subsections of the statute. Id. at 197, 199. The Third Circuit held that the bank must have been the deliberate target of the defendant's fraudulent scheme, n3 as Congress's main concern in passing the statute was "allaying crimes that undermined public confidence in banking institutions."

5

. at *Id* 200. In addition, the Government must show that the defendant actually caused the bank harm or exposed it to a risk of loss. *See, Thomas*, 315 F.3d at 196. The evidence presented at trial included the testimony of the Wells Fargo record custodian, a tape recording at of Glenny Coleman making a fraudulent telephone application for the bank loan and a deposit into Teresa Flood's bank account. There was no proof at trial, that defendant Flood knowingly executed or attempted to execute, a scheme or artifice to defraud a Wells Fargo Bank or that she intended to obtain the money.

### C. Wire Fraud

Defendant Flood contends that the prosecution's evidence at trial was insufficient to support her conviction for wire fraud. At trial, the Government presented testimony that in February 2006, Coleman, using the name "Michael Fuller" and a social security number of Jeffrey Hudak., contacted Aggressive Mortgage in Maryland about obtaining a mortgage for a residential property in Delaware. G.C. went to the Aggressive Mortgage office and filled out a mortgage loan application and submitted false identity and employment information. As a result, Aggressive Mortgage pre-qualified Coleman. for a $ 399,900 mortgage. In March 2006, the defendant called a real estate agent located in Delaware and scheduled showings of residential properties for her and Coleman. At trial, Veronica James – Lewis testified that she viewed the three properties with the defendant, Coleman. Coleman decided to purchase one of the properties.

On March 8, 2006, Coleman and another woman, Lisa Reed, went to the real estate office and Coleman signed an agreement of sale to purchase a residential property for $ 399,900 and provided a deposit for the property. The check for deposit was written

off an account held solely by defendant. Aggressive Mortgage faxed to the real estate office a letter stating that Coleman had been approved for a purchase. (N.T. 11/27/07, pp. 387-391

In order to prove wire fraud beyond a reasonable doubt, the government must present evidence of the following elements: (1) the defendant's knowing and willful participation in a scheme or artifice to defraud; (2) with specific intent to defraud; and (3) use of interstate wire communications in furtherance of the scheme. *United States v. Antico*, 275 F.3d 245, 261 (3d Cir. 2001).

In order to prove wire fraud beyond a reasonable doubt, the government must present evidence of the following elements: (1) the defendant's knowing and willful participation in a scheme or artifice to defraud; (2) with specific intent to defraud; and (3) use of interstate wire communications in furtherance of the scheme. *United States v. Antico*, 275 F.3d 245, 261 (3d Cir. 2001).

At least one element in dispute is intent. Wire fraud is a specific intent crime. A defendant cannot be convicted of it unless the Government proves beyond a reasonable doubt that she knowingly and willfully participated in a scheme to obtain money or property through fraud and specifically intended to do so. *United States v. Hedaithy*, 392 F.3d 580, 590 (3d Cir. 2004); *United States v. Antico*, 275 F.3d 245, 260 (3d Cir. 2001); see also *United States v. Henry*, 29 F.3d 112, 115 (3d Cir. 1994). In this case, the Government did not prove that Flood specifically participated in a scheme to obtain money or property.

In this case, the government did not provide sufficient evidence to prove

7

beyond a reasonable doubt that Ms. Flood caused the wire transmission, the fax of the fraudulent employment information to the Acura dealership or the fax to real estate office. The Government did not present evidence to prove that Flood participated in the fax of a letter to real estate office stating that Coleman had been approved for a purchase. (N.T . 11/27/07, pp. 395-398) Further, the Government did not prove at trial who sent the fax to the Acura dealership concerning the verification of Flood's employment information. The Government did not prove at trial who sent the fax. There was, however, a strong presumption that the fax was sent or authorized by the Acura dealership's corrupt salesman Tony Townsend. (N.T. 11/26/07, pp.160-161; N.T. 11/28/07, pp.544-545, 566-56),

    C.  **Aggravated Identity Theft**

Aggravated identity theft, 18 U.S.C. § 1028A, provides: "Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years."

In the late fall of 2004 and the spring of 2005, Glenny Coleman was running multiple identity theft, wire fraud and bank fraud schemes in Delaware and Pennsylvania. Coleman's schemes involved creating and negotiating counterfeit cheeks, purchasing cars and motorcycles with identities he created, and using genuine, but stolen, identities to commit similar fraudulent acts. In this case, the Government did not present sufficient evidence at trial to prove that Teresa Flood knowingly transfers, possesses, or uses,

without lawful authority, a means of identification of either Michael Fuller o Jeffrey Frank. In fact, at trial, the Government presented evidence that Flood used her own business entities, Agape Ventures and T &T Enterprises and her own name. At no time did Flood use the names Michael Fuller or Jeffrey Frank.

**III.     In the alternative, defendant claims that, pursuant to Rule 33, that, even if the    evidence was technically sufficient, the District Court should grant a new trial on the ground that the verdict was contrary to the weight of the evidence.**

In the alternative, defendant claims that, pursuant to Rule 33, that, even if the evidence was technically sufficient, the District Court should grant a new trial on the ground that the verdict was contrary to the weight of the evidence. The standard of review for a motion for a new trial is contained in Rule 33, which provides as follows: "on a defendant's motion, the court may grant a new trial to that defendant if the interest of justice so requires …." FED. R. CRIM. P. 33; see also *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (noting the standard).

One reason a new trial may be granted is if the verdict is against the weight of the evidence. *Tibbs v. Florida*, 457 U.S. 31, 37-39 n. 11, (1981); The Third Circuit has described a district court's consideration of a Rule 33 motion for a new trial based on the "weight of the evidence" as follows: A district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it "believes that 'there is a serious danger that a miscarriage of justice has occurred - that is,    that an innocent person has been convicted.' "*United States v. Brennan*, 326 F.3d 176, 188-189 (3d Cir. 2003) (quotations omitted); see also *United States v. Bevans*, 728 F. Supp. 340, 343 (E.D. Pa. 1990) ("[The court] may set aside the verdict and order a new trial if it is

9

ascertained that the verdict constitutes a miscarriage of justice."). When a district court evaluates a Rule 33 motion it does not view the evidence favorably to the government, but instead exercises its own judgment in assessing the government's case. n3 See *Brennan*, 326 F.3d at 189 (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002).

The standard for reviewing a motion for a new trial pursuant to Rule 33 is unlike an insufficiency of the evidence challenge, where the court must view "the evidence in the light most favorable to the government." *United States v. Zwick*, 199 F.3d 672, 688-89 (3d Cir. 1999). When reviewing a motion for acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, the court will sustain the verdict "if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 689.

The defendant acknowledged that she was involved with Coleman and that he had access to her personal business accounts and financial records. However, the Government did not meet its burden at trial to prove that the defendant had the requisite knowledge of Coleman's fraudulent schemes to convict her of the crimes charged. Coleman ran a series of fraudulent schemes with at least two other women, Dolena Grayson and Lisa Reed. (N.T. 11/28/07, pp.526-527)

**IV. Defendant claims that the Court's jury instruction concerning "deliberate ignorance" (Jury Instructions, p.27) neutralized the Court's earlier instruction regarding the instruction concerning "knowingly" and "willfully".**

Defendant claims that the Court's jury instruction concerning "deliberate ignorance" (Jury Instructions, p.27) neutralized the Court's earlier instruction regarding

10

the instruction concerning "knowingly" and "willfully". The jurors were instructed that "knowingly" means to act voluntarily and deliberately rather than mistakenly or inadvertently. The jurors were instructed that "willfully" means to act knowingly and purposely, with an intent to do something that the law forbids, that is to say, with bad purpose wither to disobey or to disregard the law. The jurors were further instructed that "In other words, a person is a culpable participant only if she had the knowledge of the illicit objectives of the fraudulent scheme and willfully intended that those larger objectives be achieved." (Jury Instructions, p.20)  Defendant claims that this instruction misstates the law of deliberate ignorance and the instruction is not supported by the evidence that was introduced at trial. Counsel objected to this instruction at trial and the objection was overruled. (N.T. Trial, 11/28/07, pp. 511-514, 599)

Jury instructions must be considered as a whole. The District Court's instructions respecting the meaning of a scheme to defraud and intent to defraud required the jury to make a finding of culpable participation in order to return a guilty verdict.  A single instruction  to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146-47, (1973). There is a "reasonable likelihood" that the jury prejudiced her by applying the challenged instruction in an impermissible manner. *Virgin Islands v. Rosa,* 399 F.3d 283, 295 (3d Cir. 2005).

In determining whether a jury charge was improper, we consider whether it "as a whole fairly and adequately submits the issues in the case to the jury." *United States*

11

*v. Zehrbach*, 47 F.3d 1252, 1264 (3d Cir. 1995) (en banc). " The focus is not on one portion of a charge in isolation, but "consider the totality of the instructions." *United States v. Coyle,* 63 F.3d 1239, 1246 (3d Cir. 1995).

Again as set forth above, at least one element in dispute is intent. Wire fraud is a specific intent crime. A defendant cannot be convicted of it unless the Government proves beyond a reasonable doubt that she knowingly and willfully participated in a scheme to obtain money or property through fraud and specifically intended to do so. *United States v. Hedaithy*, 392 F.3d 580, 590 (3d Cir. 2004); *United States v. Antico*, 275 F.3d 245, 260 (3d Cir. 2001); see also *United States v. Henry*, 29 F.3d 112, 115 (3d Cir. 1994). In this case, the

From the evidence presented, the jury reasonably could not have concluded that Flood knowingly and willfully participated in every aspect of Coleman's schemes In this case, the bank fraud and wire fraud are specific intent crimes. See *United States v. Antico*, 275 F.3d 245 (3d Cir. 2001). The jury was confused and the defendant suffered prejudice.

WHEREFORE, for the forgoing reasons, defendant by her counsel, respectfully requests that this motion to set aside the verdict and enter a judgment of acquittal or in

the alternative, grant a new trial be granted.

                                              Respectfully submitted,

                                              /s/  ELAYNE C. BRYN

                                              _____
                                              ELAYNE C. BRYN, ESQUIRE
                                              Attorney I.D. No. 51050
                                              Two Penn Center Plaza
                                              1500 J.F.K. Blvd., Suite 1230
                                              Philadelphia, PA  19102
                                              (215) 988-9570

                                              Court Appointed Counsel for
                                              Defendant, Teresa Flood

Date: March 3, 2008