IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 06-125-SLR |
| | : | |
| TERESA M. FLOOD, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR
JUDGEMENT OF ACQUITTAL AND FOR A NEW TRIAL**

NOW COMES the United States of America by and through its undersigned counsel and hereby opposes defendant's Motion for Judgment of Acquittal and Motion for a New Trial ("Motion") as set forth below.

**I.     INTRODUCTION**

On November 3, 2006, defendant Teresa Flood was charged by criminal complaint in the United States District Court for the District of Delaware.  (D.I. 2.)  On November 16, 2006, the grand jury returned a four count indictment against defendant charging her with aiding and abetting bank fraud in violation of Title 18 U.S.C. §§ 1344 and 2, aiding and abetting wire fraud in violation of Title 18 U.S.C. §§ 1343 and 2, and two counts of aiding and abetting aggravated identity theft in violation of Title 18 U.S.C. §§ 1028A and 2.  (D.I. 8.)  The grand jury returned a superseding indictment on August 28, 2007 ("Indictment").  (D.I. 37.)  The five count Indictment included the four counts from the original indictment and added an additional count, charging defendant with wire fraud in violation of Title 18 U.S.C. § 1343.

A three-day jury trial began on November 26, 2007. On November 28, 2007, the jury returned a guilty verdict on all five counts. Defendant, through her counsel, filed the Motion on December 6, 2007, and at that time advised the Court that she would submit a memorandum of law after the trial transcript became available. On February 28, 2008, defendant submitted her memorandum and on March 3, 2008, filed a Revised Memorandum of Law For a Motion for a Judgment of Acquittal and For a New Trial ("Motion"). (D.I. 67.)

Defendant contends that the jury's guilty verdict on each of the five counts was not supported by sufficient evidence and therefore the court should enter a judgment of acquittal pursuant to Fed. R. Crim. P. 29. In the alternative, defendant argues she is entitled to a new trial pursuant to Fed. R. Crim. P. 33 because the verdict was contrary to the weight of the evidence. The government opposes both of these requests as there was sufficient evidence to support the jury's finding of guilt and the verdict was consistent with the weight of the evidence. Accordingly, defendant's motion should be denied.

## II. **EVIDENCE AT TRIAL**[1]

Count One of the Indictment charged the defendant with wire fraud in connection with the purchase of a 2005 Acura TL in November 2004. At trial the government presented witnesses and documents demonstrating that in completing the credit application for the purchase of the car, defendant claimed to have worked for a company called National Auto

---

[1] The evidence cited below is not all of the evidence presented at trial, but represents a summary of salient testimony. The witnesses discussed provided additional testimony supporting the government's charges as did testimony of other witnesses and documents not specifically referred to herein.

Finance for just over four years, and that she earned approximately $35,000 annually. (11/26 Tr. 129-30.)[2] Subsequent to completing this application, a pay stub verifying the income of the defendant, purporting to be from National Auto Finance was faxed to Castle Acura from a UPS store located in Chestertown, Maryland. (11/26 Tr. 133-35.) The government called as a witness Gayle McCoy, a human resources specialist with Nouvelle Financial Services, the company that acquired National Auto Finance in December 2000. Ms. McCoy testified that Teresa Flood had never been employed by National Auto Finance and that the pay stub faxed to Castle Acura was fraudulent. (11/26 Tr. 161-64.)

      The remaining counts of the Indictment charged defendant with aiding and abetting the illegal conduct of defendant's then boyfriend, Glenny Coleman, III ("Coleman"). Coleman, posing as "Jeffrey Frank," contacted Wells Fargo Bank to apply for a business credit card for "Jeffrey Frank," of Genesis Investors Group, a fictitious company. In completing the phone application, Coleman provided Wells Fargo with the name, date of birth, and social security number of Jeffrey Frank and gave a business address for the company located in Cinnaminson, New Jersey. Subsequently, the credit card and "Super Checks" connected with the account were mailed to the Cinnaminson address. Coleman then forged a signature for Jeffrey Frank on a Super Check made payable to Agape Ventures in the amount of $15,000 and that Super Check was later deposited into Agape Ventures' account, which was held solely by the defendant. Count Two of the Indictment charged defendant with aiding and abetting Coleman in

---

      [2]All references to (Date Tr. X) refer to the trial transcripts for the respective days of trial. These transcripts referenced by the government do not include voir dire and jury instructions, but do contain all evidence, including testimony and exhibits. For the Court's convenience, the government is submitting these transcripts along with this memorandum.

commission of this bank fraud and Count Three charged her with aiding and abetting aggravated identity theft in connection with the same scheme.

At trial, the government presented the testimony of Tenelle Harris, an investigator with Wells Fargo, who testified that a business credit card account was opened in the name of Jeffrey Frank and that the card and "Super Checks" were mailed to the address in Cinnaminson. (11/27 Tr. 10-12.) Laurie Kane, a representative of PNC bank testified that the Agape Ventures account was opened by Teresa Flood, (11/27 Tr. 67-68), and that the $15,000 Super Check from Genesis Investors Group was deposited into the defendant's account and was quickly withdrawn. (11/27 Tr. 78-82.) In addition, the government presented the testimony of Robert Fumo, the landlord at the Cinnaminson address who identified the defendant, (11/27 Tr. 56), and testified that she, representing herself to be "Teresa Marie," had negotiated the lease of the property on behalf of her business partner "Vincent Dixon" and accompanied the alleged Mr. Dixon at the time he signed the lease. (11/27 Tr. 49.) Mr. Fumo also testified that he received rental payments for the Cinnaminson address drawn from the defendant's Agape Ventures account. (11/27 Tr. 52-53.)

The real Jeffrey Frank (the "J.F." of the Indictment) testified that he never applied for, nor did he authorize anyone else to apply for a Wells Fargo business credit account, nor was he connected in any way to Genesis Investors Group. Mr. Frank verified, however, that his name, social security number, and date of birth matched those given to Wells Fargo to open such an account. He also stated that he had never met the defendant or written her a check for $15,000. (11/27 Tr. 34-36.) Similarly, Vincent Dixon testified that he did not sign a lease on a property in Cinnaminson, nor did he authorize anyone to do so on his behalf. He did, however, testify that

4

he knew Coleman and that Coleman had used his identity other occasions. (11/26, 207-08.) The government also presented evidence, in the form of a certified copy of the Memorandum of Plea Agreement of Glenny Coleman, III, that Coleman had pled guilty to the bank fraud involving the Wells Fargo loan and admitted that the defendant had deposited the proceeds of that loan into her Agape Ventures bank account. (11/27 Tr. 199-200.)

Count Four of the Indictment charged the defendant with aiding and abetting wire fraud in connection with a fraudulent application for a mortgage loan submitted by Coleman, in which he used the name Michael Fuller and the social security number of J.H. to obtain pre-approval for a mortgage in the amount of $399,900. A copy of that pre-approval was subsequently faxed from Aggressive Mortgage in Maryland to a real estate broker in Delaware. Count Five charged defendant with aiding and abetting aggravated identity theft in connection with this wire fraud. At trial, the government presented Susan Kee, formerly of Aggressive Mortgage, who testified that someone presenting himself as "Michael Fuller" completed a mortgage application and presented a driver's license and social security card in the name of Michael Fuller. (11/27 Tr. 120-24.) She further testified that she obtained pre-approval of this mortgage loan and in or around March 2006 and she faxed a preapproval letter to a real estate broker in Delaware. (11/27 Tr. 128-31.) That broker, Veronica James-Lewis, also testified at trial. Ms. James-Lewis stated that she had been contacted by "Teresa Marie" to set up an appointment to view residential properties with her business associate "Michael Fuller," (11/27 Tr. 144), who she later identified as Coleman. (11/27 Tr. 141.) Ms. James-Lewis testified that on one occasion, "Teresa Marie" accompanied him to look at houses and introduced him as "Michael Fuller." (11/27 Tr. 149-50.) The government also introduced evidence that the check Coleman used to

make a deposit was drawn on the account of T&T Enterprises, (11/27 Tr. 164-65), an account held solely by defendant. (11/26 Tr. 170-71.) In addition, Coleman's memorandum of plea agreement stated that Ms. Flood had accompanied him, as "Michael Fuller," to look at properties, (11/27 Tr. 200), and a representative from the social security administration testified that the social security number provided in the loan application belonged to "J.H." (11/27 Tr. 198.)

The defendant called one witness, Glenny Coleman, III. After the close of evidence, closing arguments, and hearing the Court's instructions, the jury returned a verdict of guilty on all five counts of the Indictment.

### III.  ARGUMENT

In the Motion, defendant argues that the evidence at trial was insufficient to support the guilty verdict for each of the crimes charged and that the Court should enter a judgment of acquittal. In the alternative, she asserts that the verdict was contrary to the weight of the evidence and accordingly that she is entitled to a new trial. Finally she claims the Court's jury instruction on deliberate ignorance was improper. Each of these claims fails.

#### A.  The evidence presented by the government supports the jury's verdict.

When considering a motion for judgment of acquittal made pursuant to Fed. R. Crim. P. 29, the court must consider the record in the light most favorable to the government in order to determine if a rational finder of fact could have found defendant guilty beyond a reasonable doubt based upon the evidence. See United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005)

(quoting United States v. Smith, 294 F.3d 474, 476 (3d Cir. 2002)).  A finding of insufficiency and the granting of such a motion should be "confined to cases where the prosecution's failure is clear."  Brodie, 403 F.3d at 133.  Particular care should be taken so as "not to usurp the role of the jury be weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." Id.  Such a motion "places a very heavy burden on the appellant." United States v. Leahy, 445 F.3d 634, 657 (3d Cir. 2006).  Defendant has failed to carry that burden.

### 1. The evidence supports the verdict on Count One (wire fraud in connection with the Acura).

To prove wire fraud, the government must prove that the defendant: (1) knowingly and willfully participated in a scheme or artifice to defraud; (2) with the specific intent to defraud; and (3) used interstate wire communications in furtherance of the scheme.  See, e.g., United States v. Hedaithy, 392 F.3d 580, 590 (3d Cir. 2004).  The evidence presented at trial supports a guilty verdict on this count.  The government presented evidence showing that defendant went into a car dealership and completed a credit application using knowingly false employment information.  In particular, she fabricated both her income and the fact that she was employed by National Auto Finance in order to obtain the vehicle.  This was the scheme.  Subsequently, a fax was sent from Maryland to the dealership in Delaware to purportedly verify her employment information— an interstate wire in furtherance of her scheme to obtain a car based upon the false employment an income information.

Defendant does not actually attack the sufficiency of the government's evidence with regard to the elements of the offense.  Instead, she appears to claim that the evidence is insufficient because the government did not prove beyond a reasonable doubt that defendant

7

caused the fax with the fraudulent employment information to be sent to the dealership because it did not prove that she personally sent the fax.[3]  However, the government is not required to prove this.  As the Court properly instructed the jury:

> It is not necessary for a defendant to be directly or personally involved in the wire communication, as long as the wire communication was reasonably foreseeable in the execution of the alleged scheme to defraud in which the defendant is accused of participating.
>
> In this regard, it is sufficient to establish this element of the crime if the evidence justifies a finding that the defendant caused the wire communication to be transmitted by others.  This does not mean that the defendant must specifically have authorized others to do the transmitting.  When one does an act with knowledge that the wire communication will follow in the ordinary course of business or where such wire communication can reasonably be foreseen, even though not actually intended, then she causes the wire communication to be transmitted.

(Jury Instructions at 17); (D.I. 51).  See United States v. Hannigan, 27 F.3d 890, 894 (3d Cir. 1994) (for mail fraud, no requirement that defendant personally place item in mail); United States v. Bentz, 21 F.3d 37, 40 (3d Cir. 1994) (element sufficiently proven if defendant should have reasonably foreseen use of wire).  See also United States v. Giovengo, 637 F.2d 941, 944 (3d Cir. 1980 (cases interpreting mail fraud statute also apply to interpretation of wire fraud statute).

The evidence clearly shows that defendant caused the fax to be sent, because it was in connection with her fraudulent loan application and contained fraudulent information consistent with the false representations she made on her loan application at the dealership.  It was the

---

[3] In her motion, the defendant lumps together her arguments regarding both wire fraud counts.  The government has separated its response and separately discusses Count One (the Acura), where defendant was convicted as a principal, and Count Four (the mortgage), where defendant was convicted as an aider and abettor.

defendant who went to Castle Acura and signed the credit application stating she worked for National Auto Finance. The car was for defendant's benefit and use. The fax supported her credit application by claiming she did, in fact, work at National Auto Finance, helping her to secure a fraudulent loan. Moreover, the evidence at trial established beyond a reasonable doubt that defendant herself sent the fax from the UPS Store in Maryland to Castle Acura. Evidence showed that the defendant herself went into Castle Acura and completed the false credit application stating she worked for National Auto Finance. (11/26 Tr. 125-26.) The fax cover sheet accompanying the fraudulent pay stub stated it was sent from "T. Flood." (Gov. Ex. 4.) Further the government presented evidence that the only ATM card connected to a bank account held solely by the defendant was used in the same shopping center as the UPS Store from which the fax was sent on the same date and near the time of the fax transmission. (11/26 Tr. 171,178-79.)

The government presented sufficient evidence at trial to prove beyond a reasonable doubt each element of the wire fraud offense charged in Count One of the Indictment and accordingly, defendant's motion with regard to Count One should be denied.

> **2. The evidence supports the verdict on Counts Two and Three (aiding and abetting bank fraud and aggravated identity theft in connection with the Wells Fargo line of credit).**

Defendant attacks the sufficiency of the government's evidence with regard to Counts Two and Three of the Indictment. Under defendant's theory, the evidence did not support her conviction for bank fraud because the government did not present evidence as to her own specific intent to defraud a financial institution. This argument, however, is based on the erroneous premise that Count Two simply charges the defendant with bank fraud, rather than the

9

actual charge of aiding and abetting bank fraud. Therefore, there is no requirement that the government have proven the underlying elements of the bank fraud offense specifically with regard to Teresa Flood. "A person may violate the law even though he or she does not personally do each and every act constituting the offense if that person 'aided and abetted' the commission of that offense." United States v. Gordon, 290 F.3d 539, 543 (3d Cir. 2002).

      To convict defendant on an aiding and abetting theory, the government must prove that (1) the underlying offense was committed; (2) defendant knew the underlying offense was being committed or was going to be committed; (3) defendant did some act for the purpose of assisting the principal in the commission of the offense and with the intent that he commit the offense; and (4) the acts themselves did somehow assist in the commission of the offense. Id. at 543-45. (Jury Instructions at 24-25.)

      The trial evidence established that, Glenny Coleman, III, committed bank fraud. The government presented evidence sufficient to show his guilt of this offense including: an audio recording of Coleman committing the fraud by posing as Jeffrey Frank and using Frank's identity to secure a $30,000 credit line with Wells Fargo Bank, (11/26 Tr. 215-31); proof of Wells Fargo's status as an FDIC insured institution, (11/27 Tr. 33); the $15,000 Super Check written off of the account with a forged signature of Jeffrey Frank (which was deposited into defendant's solely held bank account), (11/27 Tr. 13-15); and, of course, a certified copy of Coleman's plea agreement admitting to this same offense. (11/27 Tr. 199-200; Gov. Ex. 59.) Further, as a defense witness, Coleman admitted that he committed bank fraud against Wells Fargo. (11/28 Tr. 74.)

The evidence similarly established the remaining elements of aiding and abetting bank fraud. Defendant obtained office space for Coleman, holding herself out as "Teresa Marie" and him out as "Vincent Dixon." (11/27 Tr. 40-49.) She paid the rent on that office space. (11/27 Tr. 53.) Coleman then used this office space as the address for Genesis Investors Group, the address to which Wells Fargo sent the Super Checks. (11/27 Tr. 12.) The fraudulent $15,000 check was deposited into defendant's Agape Ventures bank account, (11/27 Tr. 77-80), and defendant withdrew almost $10,000 of that money in the several days following its deposit. (11/27 Tr. 81-82.) Based on this evidence, the jury had a sufficient basis to convict defendant of aiding and abetting bank fraud.

The same evidence supports defendant's conviction on Count Three of the Indictment, for aiding and abetting aggravated identity theft. The underlying bank fraud, the audio of the application call during which Coleman provided Wells Fargo with Jeffrey Frank's name, date of birth, and social security number, (11/26 Tr. 215-31), Mr. Frank's testimony, (11/27 Tr. 34-38), the testimony of the social security agency representative, (11/27 Tr. 198), Coleman's plea agreement, (11/27 Tr. 199-200; Gov. Ex. 59), and his live testimony, (11/28 Tr. 48), all support the jury's determination that defendant aided and abetted aggravated identity theft.

Indeed, although defendant challenges the sufficiency of the evidence to support her conviction, her motion does not specifically address the sufficiency of the evidence to support her conviction as an aider and abettor, rather than as a principal. Defendant's Motion instead focuses its attack on the sufficiency of the evidence to support her conviction of a crime with which she was not charged and of which she was not convicted. However, because there was

sufficient evidence to support her conviction on Counts Two and Three of the Indictment, defendant's Motion should be denied with regard to these counts.

### 3. The evidence supports the verdict on Counts Four and Five (aiding and abetting wire fraud and aggravated identity theft in connection with the mortgage application).

Defendant's challenge on Counts Four and Five of the Indictment fails for the same reasons set forth above. Once again, defendant sets up her argument as if the Indictment charged her as a principal, rather than an aider and abettor, for the wire fraud and accompanying aggravated identity theft related to the fraudulent mortgage application. Thus the government did not need to prove that each element of the underlying offenses were committed by Teresa Flood, but that, as charged in the Indictment, these offenses were committed by Glenny Coleman, III, aided and abetted by defendant. See Gordon, 290 F.3d at 543.

Here there is sufficient evidence to support the jury's determination that defendant knew that Coleman was committing or going to commit wire fraud and aggravated identity theft, that she took actions for the purpose of assisting him in committing these crimes, and her actions did, in fact, assist in the commission of the crimes. Id. at 543-45. The evidence plainly showed that Coleman committed the underlying offenses. Susan Kee, the mortgage broker, testified that "Michael Fuller," completed a mortgage application and as a part of that process supplied her with a social security number. (11/27 Tr. 122-24.) Based on the information furnished by "Michael Fuller," she was able to obtain pre-approval for a mortgage on his behalf and that she sent a pre-approval letter, by fax, from her office in Baltimore, Maryland to a realtor located in

Delaware. (11/27 Tr. 128-31.) Coleman, posing as "Michael Fuller" toured houses, (11/27 Tr. 150-51), and selected one for purchase and signed a contract for sale. (11/27 Tr. 159-62.) Coleman pled guilty to the wire fraud and identity theft associated with this scheme, (11/27 Tr. 200), and admitted it again on the witness stand during trial. (11/28 Tr. 65-66.) Evidence showed defendant aided and abetted Coleman by posing as "Teresa Marie" and contacting the real estate agent and making arrangements for "Michael Fuller" to view residential properties, (11/27 Tr. 144), introducing Coleman as "Michael Fuller" to the real estate agent, (11/27 Tr. 150), and accompanying him as he toured the houses and selected a property. (11/27 Tr. 150-53.) Further, a check from defendant's solely held T&T Enterprises account, (11/26 Tr. 170-71), was used to pay the deposit on the house. (11/27 Tr. 164-65.)

The jury's verdict of guilty on Counts Four and Five of the Indictment was supported by the evidence at trial. Accordingly, defendant's Motion for a judgment of acquittal should also be denied with respect to these counts.

### B.    The jury's verdict was consistent with the weight of the evidence.

Under Fed. R. Crim. P. 33, "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Although a court may grant a motion upon a finding that the verdict is inconsistent with the weight of the evidence it should do so only when "it believes that 'there is a serious danger that a miscarriage of justice has occurred— that is, that an innocent person has been convicted.'" United States v. Brennan, 326 F.3d 176, 188-89 (3d Cir. 2003) (quoting United States v. Santos, 20 F.3d 281, 285 (7th Cir. 1994) (internal quotation omitted)). Disposition of a motion for a new trial is within the sound

discretion of the district court. See United States v. Leary, 378 F. Supp.2d 482, 488-89 (D. Del. 2005).

Defendant's bare contention that the government did not meet its burden at trial fails to make any showing that the verdict is contrary to the weight of the evidence. The Motion fails to articulate how a miscarriage of justice has occurred or even raise the inference that an innocent person has been convicted. Indeed the weight of the evidence presented at trial and as summarized in this motion is in accord with the decision of the jury.

Defendant's motion for a new trial pursuant to Fed. R. Crim. P. 33 should also be denied.

### C.     The Court's deliberate ignorance instruction was proper.

Defendant asserts that the Court's instruction concerning "deliberate ignorance" was improper in so far as it was inconsistent with the Court's prior instructions on the meaning of "knowingly." Where jury instructions articulated the "proper legal standard," they are appropriate and cannot form the basis for a challenge to the jury's verdict. See United States v. Flores, 454 F.3d 149, 156 (3d Cir. 2006). Here the Court's instruction was both legally correct and appropriate in light of the evidence presented at trial.

There is no inconsistency between requiring that the government demonstrate that a defendant acted "knowingly" and a deliberate ignorance instruction. To the contrary, "deliberate ignorance" (sometimes called "willful blindness") is a form of the "knowing" mens rea. "Knowledge may be demonstrated by showing that a defendant either had actual knowledge or 'deliberately closed his eyes to what otherwise would have been obvious to him concerning the fact in question.'" Flores, 454 F.3d at 155 (quoting United States v. Stewart, 185 F.3d 112, 126

(3d Cir. 1999)). "[A] willful blindness charge does not lower the government's burden of proving intent as long as it 'emphasize[s] the necessity of proving a subjective awareness.'" Stewart, 185 F.3d at 126 (quoting United States v. Caminos, 770 F.2d 361, 366 (3d Cir. 1985)). Here the Court instructed the jury as follows:

> The government may prove that the defendant acted "knowingly" by proving, beyond a reasonable doubt, that the defendant deliberately closed her eyes to what would otherwise have been obvious to her. No one can avoid responsibility for a crime by deliberately ignoring what is obvious. Therefore, a person's knowledge of a particular fact may be shown from a deliberate or intentional ignorance or deliberate or intentional blindness to the existence of that fact.
>
> It is, of course, entirely up to you as to whether you find any deliberate ignorance or deliberate closing of the eyes and any inferences to be drawn from any such evidence.
>
> You may not conclude that the defendant had knowledge, however, from proof of a mistake, negligence, carelessness, or a belief in an inaccurate proposition.

(Jury Instructions, p. 27.)

The very language of this instruction was endorsed by the Third Circuit in United States v. Stuart, 22 F.3d 76, 81 (3d Cir. 1994) (upholding deliberate ignorance charge where defendant charged with receipt of stolen property which includes element that defendant knew property was stolen).[4] Controlling precedent makes clear that a deliberate ignorance instruction is proper even where an offense requires knowledge on the part of the defendant. The government may meet its burden of proving knowledge by proving defendant deliberately and willful ignored obvious evidence of wrongdoing and failed to ask obvious questions. See Flores, 454 F.3d at

---

[4]Defendant does not appear to object to the specific language of the instruction, but instead to the instruction as a whole. As discussed supra, this argument fails.

156. There is simply no inconsistency between a deliberate ignorance instruction and an instruction that a defendant have acted knowingly. Id. at 155.

Further, this instruction was amply supported by the evidence offered at trial. The defendant accompanied and introduced Coleman as "Vincent Dixon," (11/27 Tr. 49), and "Michael Fuller." (11/27 Tr. 149-50.) At various points, she completed paperwork that included at least one other known alias for Coleman, "Eugene Adams." (11/27 Tr. 190, 216.) Defendant herself did not provide her full name, opting instead to use her "stage name," "Teresa Marie." (11/28 Tr. 78.) She received a $15,000 check made payable to her business from "Jeffrey Frank," a man she had never met and for whom she had not performed any business services. (11/27 Tr. 36, 38.) This evidence, and other evidence offered at trial, warranted the instruction and supported the jury's eventual determination that, at very least, defendant had failed to ask obvious questions, choosing instead to bury her head in the sand. Id. at 156.

Because the Court's instruction on "deliberate ignorance" was warranted by the evidence at trial, was legally proper, and technically correct, defendant's challenge to the instruction fails to provide any basis for granting a judgment of acquittal or a new trial.

**IV.   CONCLUSION**

Defendant's Motion for Judgment of Acquittal and New Trial should be denied. The evidence presented at trial supported the verdict of the jury and that verdict was wholly consistent with the weight of the evidence at trial. The Court's instruction regarding "deliberate ignorance" was proper based on the evidence presented at trial and, under controlling precedent,

may be offered even where the government must prove that a defendant acted knowingly. Therefore, it fails to provide any basis for disturbing the jury's verdict.

For the foregoing reasons, the United States respectfully requests that the Court deny the Motion.

                                               Respectfully submitted,

                                               COLM F. CONNOLLY
                                               United States Attorney

                                               BY: s/Lesley F. Wolf
                                               Lesley F. Wolf
                                               Assistant United States Attorney

Dated: March 26, 2008

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. 06-125-SLR |
| ) | |
| TERESA FLOOD, ) | |
| ) | |
| Defendant. ) | |

## CERTIFICATE OF SERVICE

    I, Lesley F. Wolf, Assistant United States Attorney for the District of Delaware, hereby certify that on the 26th day of March 2008, I caused to be electronically filed a **Memorandum of Law in Opposition to Defendant's Motion for Judgment of Acquittal and For a New Trial** with the Clerk of the Court. I further certify that a copy of the foregoing was sent via U.S. mail to counsel of record as follows:

Elayne C. Bryn, Esq.
Two Penn Center
1500 JFK Blvd., Suite 1230
Philadelphia, PA 19102


    /s/ Lesley F. Wolf
Lesley F. Wolf
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Criminal Action No. 06-125-SLR |
| | : |
| THERESA M. FLOOD, | : |
| | : |
| Defendant. | : |

**NOTICE OF FILING OF PAPER DOCUMENT**

Notice is hereby given that the Plaintiff, United States of, in the above-titled action, by and through its attorneys, Colm F. Connolly, United States Attorney for the District of Delaware and Lesley F. Wolf, Assistant United States Attorney for the District of Delaware, have filed with the Court, in paper format, a copy of the Trial Transcript for November 26, 2007, November 27, 2007 and November 28, 2007. The original documents to be maintained in the case file in the Clerk's Office.

    COLM F. CONNOLLY
    United States Attorney

  By:/s/Lesley F. Wolf
    Lesley F. Wolf
    Assistant United States Attorney
    The Nemours Bldg
    1007 Orange Street, Suite 700
    P. O. Box 2046
    Wilmington, Delaware 19801
    (302) 573-6277
    Lesley.Wolf@usdoj.gov

**Dated: March 26, 2008**