IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Crim. No. 06-125-SLR |
| | ) | |
| TERESA M. FLOOD, | ) | |
| | ) | |
| Defendant. | ) | |

Colm F. Connolly, United States Attorney and Lesley F. Wolf, Assistant United States Attorney, United States Attorney's Office, Wilmington, Delaware. Counsel for Plaintiff.

Elayne C. Bryn, Esquire, Philadelphia, Pennsylvania. Counsel for Defendant.

**MEMORANDUM OPINION**

Dated: June 3, 2008
Wilmington, Delaware

ROBINSON, District Judge

## I. BACKGROUND

On November 16, 2006, a grand jury returned a four count indictment against defendant Teresa Flood charging her with: (1) aiding and abetting bank fraud in violation of 18 U.S.C. §§ 1344 and 2; (2) aiding and abetting wire fraud in violation of 18 U.S.C. §§ 1343 and 2; and (3) two counts of aiding and abetting aggravated identity theft in violation of 18 U.S.C. §§ 1028A and 2. (D.I. 8) The grand jury returned a superseding indictment ("the indictment") on August 28, 2007, which added an additional count, charging wire fraud in violation of 18 U.S.C. § 1343. (D.I. 37)

A three-day jury trial commenced on November 26, 2007. On November 28, 2007, a jury returned a guilty verdict on all five counts of the indictment. (D.I. 49) Defendant subsequently moved for judgment of acquittal and new trial pursuant to Fed. R. Crim. P. 29 and 33. (D.I. 59) Defendant contends the jury's guilty verdict on each of the five counts was not supported by sufficient evidence, requiring a judgment of acquittal be entered pursuant to Rule 29. (D.I. 67) Defendant also argues that she is entitled to a new trial pursuant to Rule 33 because the verdict was contrary to the weight of the evidence. Plaintiff United States of America opposes the motion, arguing that there was sufficient evidence to support the jury's finding of guilt and the verdict was consistent with the weight of evidence. (D.I. 70) The court has jurisdiction pursuant to 18 U.S.C. § 3231. For the reasons that follow, defendant's motion is denied.

## II. STANDARD OF REVIEW

Federal Rule of Criminal Procedure 29(c)(1) provides that following a jury verdict, "a defendant may move for a judgment of acquittal." In ruling on a motion for judgment

2

of acquittal, the "court must review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005) (quoting United States v. Smith, 294 F.3d 473, 476 (3d Cir. 2002)). Courts must be "vigilant not to usurp the role of the jury by weighing credibility and assigning weight to the evidence or by substituting its judgment for that of the jury." Id. at 133. The court is not permitted to weigh the evidence or assess the credibility of witnesses, both functions for the jury. United States v. Casper, 956 F.2d 416, 421 (3d Cir. 1992). The defendant bears a "very heavy burden" when challenging the sufficiency of the evidence supporting a jury verdict. United States v. Coyle, 63 F. 3d 1239, 1243 (3d Cir. 1995), and "a finding of insufficiency should 'be confined to cases where the prosecution's failure is clear.'" Smith, 294 F. 3d at 477 (quoting United States v. Leon, 739 f.2d 245, 251 (3d Cir. 1996)).

Federal Rule of Criminal Procedure 33 allows a court, upon motion of a defendant, to grant a new trial if mandated by the interests of justice. United States v. Brennan, 326 F.3d 176, 189 (3d Cir. 2003). A court may order a new trial where the jury's verdict is contrary to the weight of the evidence only if the court believes that there is a serious danger of a miscarriage of justice, that is, an innocent person has been convicted. United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002). In reviewing a Rule 33 motion, the court exercises its own judgment in assessing the case against the defendant and the decision to grant a new trial is vested within the court's sound discretion. Johnson, 302 F.3d at 150; United States v. Mastro, 570 F. Supp. 1388, 1390 (E.D. Pa 1983).

## III. DISCUSSION

### A. Wire Fraud

Count one of the indictment charges defendant with wire fraud in connection with the purchase of a 2005 Acura TL in November 2004 from Castle Acura, a car dealership located in Delaware. The evidence presented at trial demonstrated that defendant completed an application for the purchase of the car based on fraudulent information. (GX1, GX2, Gx5) Specifically, defendant filled out and signed a credit application stating she worked at National Auto Finance for over four years and earned approximately $35,000 a year. (D.I. 62 at 127-35) A pay stub purportedly from National Auto Finance was faxed to Castle Acura from a UPS store in Chestertown, Maryland. (Id. at 133-136, 139; GX5) The fax cover sheet indicated it was from "T. Flood". (GX4) An ATM card associated with a bank account maintained solely by defendant was used in the same shopping center as the UPS Store from which the fax was sent on the same date and around the time of the fax transmission. (Id. at 178-179, 140; GX 13) Gayle McCoy, a human resource specialist, testified that defendant had never been employed by National Auto Finance and that the pay stub faxed to Castle Acura was fraudulent. (Id. at 139, 140, 157-63, 170-71; GX5, GX11) Based on the information submitted, defendant's car loan was approved. (Id. at 143; GX7)

Considering this evidence in the light most favorable to plaintiff, the court finds that sufficient evidence has been adduced upon which a rational trier of fact could find that all of the elements of the respective offense have been proven beyond a

4

reasonable doubt.[1] Given the court's finding that there is substantial evidence to uphold the jury's guilty verdict, the court finds that the "interests of justice" do not require a new trial and that there is not a "serious danger . . . that an innocent person has been convicted." United States v. Brennan, 326 F.3d at 189.

**B. Counts two and three: aiding and abetting Glenny Coleman, III in the commission of bank fraud and aggravated identity theft in connection with the Wells Fargo line of credit**

At trial, an audio recording was played for the jury of a conversation between Glenny Coleman, III ("Coleman")[2] and a Well Fargo bank employee. Coleman had contacted Wells Fargo Bank to apply for a business line of credit for a "Jeffrey Frank" of the Genesis Investors Group, a fictitious company. During the taped conversation, Coleman provided the name, date of birth and social security number belonging to "Jeffrey Frank" in order to obtain a $30,000 line of credit. (GX 23) Coleman gave a business address for the company located in Cinnaminson, New Jersey.

---

[1] According to the instructions to the jury, in order to prove wire fraud, plaintiff must prove each of the following elements beyond a reasonable doubt:
First:   That there was a scheme or artifice to defraud;
Second:   That the defendant knowingly devised or participated in the scheme or artifice with the intent to defraud; and
Third:   That in advancing, furthering, or carrying out the scheme, the defendant caused interstate wire communications to take place as specified in the indictment.
(D.I. 51 at 15)

[2] Coleman is defendant's former boyfriend and father of her child. He pleaded guilty on December 14, 2006 to five counts of an indictment charging him with: (1) conspiracy to utter counterfeited securities in violation of 18 U.S.C. §§ 513(a), 371; (2) bank fraud in violation of 18 U.S.C. § 1344; (3) identity theft in violation of 18 U.S.C. § 1028(a)(7); (4) fraudulent use of a Social Security number in violation of 42 U.S.C. § 408(a)(7)(B); (5) aggravated identity theft in violation of 18 U.S.C. § 1028A; and (6) wire fraud in violation of 18 U.S.C. § 1343. United States v. Glenny Coleman, Crim. No. 06-89-SLR (D. Del. 2006) (D.I. 14).

Tenelle Harris, an investigator at Wells Fargo Bank, testified that a business card credit account was opened under "Jeffrey Frank's" name and that the card and "Super Checks" were mailed to the Cinnaminson, New Jersey business address. (D.I. 64 at 10-16) Laurie Kane, a representative of PNC Bank, testified that defendant opened a bank account for Agape Ventures. (Id. at 67-68; GX 33) Kane further testified that a $15,000 "Super Check" from Genesis Investors Group was deposited into the PNC account. (Id. at 78-82; GX 38) Defendant withdrew $10,000 of that money several days following its deposit into her account. (Id. at 81-82)

Robert Fumo, landlord at the Cinnaminson, New Jersey business address, testified that defendant negotiated the lease of the property. (Id. at 39, 40, 49) According to Fumo, defendant identified herself as "Teresa Marie" and accompanied her business associate "Vincent Dixon", actually Coleman, at the lease signing. The rental checks were paid, Fumo testified, from defendant's PNC account under "Agape Ventures". (Id. at 52-53, 81)

Jeffrey Frank testified that he never applied for, or authorized anyone to apply for, a Wells Fargo Bank business credit account. (D.I. 64 at 34-36) He denied any connection with Genesis Investors Group. Frank did not know defendant nor did he write her a check for $15,000. Vincent Dixon testified that he did not sign a lease for property located in Cinnaminson, New Jersey. (D.I. 62 at 211; GX 30) Dixon did acknowledge knowing Coleman and testified that Coleman had used his identity on other occasions. (Id. at 211-15)

Coleman testified that defendant did not know anything about any of his schemes or illegal conduct. (D.I. 65 at 556-78) Coleman admitted being a con man

6

and committing ten crimes involving dishonesty. He admitted committing the underlying elements of the bank fraud and identity theft. His plea agreement was admitted into evidence. (GX 59) Although Coleman insisted that defendant was unaware of his conduct, he admitted that she used a stage name "Teresa Marie", signed a fake business license for Coleman, helped "Vincent Dixon" rent office space, accompanied Coleman (acting as "Michael Fuller") to view property, and ran counterfeit checks through her bank accounts. (Id. at 595-596)

Defendant contends that the evidence presented did not establish that she had the specific intent required to prove bank fraud. She asserts there was no proof that she knowingly executed or attempted to execute a scheme or artifice to defraud Wells Fargo or that she attempted to obtain the money. Likewise, she avers that the evidence at trial was insufficient to support her conviction for wire fraud. There was no proof presented that she specifically participated in, or knowingly executed or attempted to execute a scheme or artifice to defraud Wells Fargo, or that she intended to obtain the money.

Considering the evidence in the light most favorable to plaintiff, court finds that sufficient evidence has been presented upon which the jury could find defendant guilty of counts two and three. Because defendant was charged with aiding and abetting bank fraud and aiding and abetting identity theft, the government was not required to prove the underlying elements of the bank fraud offense or aggravated identity theft. The jury instructions included an aiding and abetting charge.[3] (D.I. 51 at 24-25) It is

---

[3]With respect to counts two, three, four and five, the jury received an aiding and abetting instruction which provided as follows:

7

presumed that the jury followed the court's instructions.  <u>United States v. Restaino</u>, 405 F.2d 628, 630 (3d Cir. 1968).  The interests of justice do not require a new trial.

### C.  Counts four and five:  aiding and abetting wire fraud and aggravated identity theft in connection with a mortgage application

---

A person may be guilty of offenses because she personally committed the offenses herself or because she aided and abetted another person in committing the offenses.  A person who has aided and abetted another person in committing an offense is often called an accomplice.  The person whom the accomplice aids and abets is known as the principal.

In this case, the government alleges that the defendant aided and abetted Glenny Coleman in committing bank fraud, aggravated identity theft and wire fraud as charged in counts two, three, four and five of the indictment.  In order to find the defendant guilty of these offenses because she aided and abetted Glenny Coleman in committing these offenses, you must find that the government proved beyond a reasonable doubt each of following four requirements:

First:  That Glenny Coleman committed the offenses charged by committing each of the elements of the offenses charged, as I have explained those elements to you in these instructions.

Second:  That the defendant knew that the offenses charged were going to be committed or were being committed by Glenny Coleman; and

Third:  That the defendant did some act or acts for the purpose of assisting Glenny Coleman in committing the offenses and with the intent that Glenny Coleman commit the offenses; and

Fourth:  That the defendant's acts did, in some way, assist Glenny Coleman to commit the offenses.  The defendant's acts need not themselves be against the law.

Evidence that the defendant was merely present during the commission of the offenses is not enough for you to find the defendant guilty as an aider and abetter.  In addition, if the evidence shows that the defendant knew that the offenses were being committed or were about to be committed, but does not also prove beyond a reasonable doubt that it was the defendant's intent and purpose to assist or otherwise associate herself with the offenses, you may not find the defendant guilty of the offenses as an aider and abetter. The government must prove beyond a reasonable doubt that the defendant in some way participated in the offenses committed by Glenny Coleman as something the defendant wished to bring about and to make succeed.
(D.I. 51 at 24-25)

Susan Kee, a mortgage broker, testified that "Michael Fuller"[4] completed a mortgage application and supplied her with a social security number. (D.I. 64 at 122-124) Based on the information supplied, Kee obtained pre-approval for a mortgage for "Michael Fuller". Kee sent a pre-approval letter by fax from her office in Baltimore, Maryland to a realtor in Delaware. (Id. at 128-131) Defendant posed as Teresa Marie and contacted the real estate agent to arrange house tours for "Michael Fuller". (Id. at 150) Coleman testified that defendant accompanied him on the house tours. (Id. at 150-153) Coleman signed a contract for sale. (Id. at 159-62) A check from defendant's solely held bank account was used to pay the deposit on the house. (D.I. 62 at 170-171) Coleman pleaded guilty to the wire fraud and identity theft associated with the counts related to defendant and testified about the actions at trial. (D.I. 65 at 65-66; GX 59) Despite Coleman's assertions that defendant was not aware of his activities, the verdict suggests that the jury believed otherwise.

Having considered the evidence advanced at trial, the court concludes there was substantial evidence to uphold the jury's guilty verdict and, similarly, nothing presented to suggest that the interests of justice mandate a new trial.

### D. Jury Instruction

Defendant asserts that the court erred in instructing the jury on "deliberate ignorance" because the charge is inconsistent with the court's prior instructions on the meaning of "knowingly". (D.I. 67) Defendant argues that the jury was confused by the

---

[4] Actually, Coleman.

9

charge and there is a reasonable likelihood that the jury prejudiced her by applying the challenged instruction in an impermissible manner.

Plaintiff contends there is no inconsistency between requiring it to prove that a defendant acted "knowingly" and including a deliberate ignorance instruction because deliberate ignorance is a form of the "knowing" mens rea. (D.I. 70) Plaintiff submits that knowledge may be demonstrated by showing that a defendant either had actual knowledge or "deliberately closed his eyes to what otherwise would have been obvious to him concerning the fact in question." United States v. Flores, 454 F.3d 149, 156 (3d Cir. 2006); see United States v. Stuart, 22 F.3d 76, 81 (3d Cir. 1994).

The jury was charged with the following deliberate ignorance instruction:

> The government may prove that the defendant acted "knowingly" by proving, beyond a reasonable doubt, that the defendant deliberately closed her eyes to what would otherwise have been obvious to her. No one can avoid responsibility for a crime by deliberately ignoring what is obvious. Therefore, a person's knowledge of a particular fact may be shown from a deliberate or intentional ignorance or deliberate or intentional blindness to the existence of that fact.
>
> It is, of course, entirely up to you as to whether you find any deliberate ignorance or deliberate closing of the eyes and any inferences to be drawn from any such evidence.
>
> You may not conclude that the defendant had knowledge, however, from proof of a mistake, negligence, carelessness, or a belief in an inaccurate proposition.

(D.I. 51 at 28)

It is beyond dispute that instructions to the jury must provide a clear articulation of the relevant legal standards. United States v. Goldblatt, 813 F.2d 619, 623 (3d Cir. 1987). The instructions must be carefully crafted to avoid confusing or misleading the jury. United States v. Johnstone, 107 F.3d 200, 204 (3d Cir. 1997). "The charge to the

jury, taken as a whole and in light of the evidence presented, must fairly and adequately submit the issues in the case to the jury." United States v. Schneider, 14 F.3d 876, 878 (3d Cir. 1994).

Reviewing the trial record with these principles in mind, the court's inclusion of a deliberate ignorance charge was appropriate in light of the evidence presented and discussed above. The inclusion of this instruction does not warrant a new trial or judgment of acquittal.

## IV. CONCLUSION

The testimony elicited by the government at trial, which the jury apparently believed, together with the exhibits and stipulations of the parties was sufficient to establish each of the elements of these offenses beyond a reasonable doubt. Defendant's motion for judgment of acquittal or new trial is denied. An appropriate order shall issue.