IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TERESA M. FLOOD,                          )
                                          )
        Movant/Defendant,                 )
                                          ) Crim. No. 06-125-SLR
        v.                                ) Civ. No. 09-856 -SLR
                                          )
UNITED STATES of AMERICA,                 )
                                          )
        Respondent/Plaintiff.             )


**MEMORANDUM OPINION**

---

Teresa M. Flood.  Pro se movant.

Edward J. McAndrew,  Assistant United States Attorney, United States Department of
Justice, Wilmington, Delaware.  Counsel for respondent.

---

June   11 , 2012
Wilmington, Delaware

**ROBINSON,** District Judge

## I. INTRODUCTION

Teresa M. Flood ("movant") timely filed a motion to vacate, set aside, or correct

sentence pursuant to 28 U.S.C. § 2255 (D.I. 88) while in custody at the Federal Prison

Camp in Alderson, West Virginia, and then filed an amended § 2255 motion. (D.I. 102)

Respondent filed an answer in opposition. (D.I. 114) For the reasons discussed, the

court will deny movant's amended § 2255 motion without holding an evidentiary

hearing.

## II. BACKGROUND

As set forth by the Court of Appeals for the Third Circuit,

> [m]ovant's convictions arose out of several schemes in which she
> participated with Glenny Coleman III, her former boyfriend and the father
> of her child. The superseding five-count indictment charged her with one
> count of bank fraud in violation of 18 U.S.C. §§ 2 and 1344, two counts of
> aggravated identity theft in violation of 18 U.S.C. §§ 2 and 1028A, and two
> counts of wire fraud in violation of 18 U.S.C. §§ 2 and 1343. Coleman
> was charged in a fifteen-count indictment with crimes similar to movant's.
> Coleman pled guilty to five counts, and the district court sentenced him to
> 129 months imprisonment, but movant proceeded to trial to challenge the
> sufficiency of the evidence against her.
>
> At trial, movant called Coleman, who testified that he had "duped" her and
> that he was the "con man." At the end of the trial, the district court
> instructed the jury on the charges against movant and the elements
> necessary to prove those crimes. It also charged the jury with the
> following "deliberate ignorance" instruction, over movant's objection:
>
> > "The government may prove that movant acted 'knowingly' by
> > proving beyond a reasonable doubt, that the defendant deliberately
> > closed her eyes to what would otherwise have been obvious to her.
> > No one can avoid responsibility for a crime by deliberately ignoring
> > what is obvious. Therefore, a person's knowledge of a particular
> > fact may be shown from a deliberate or intentional ignorance or
> > deliberate or intentional blindness to the existence of that fact."

"It is, of course, entirely up to you as to whehter you find any deliberate ignorance or deliberate closing of the eyes and any inferences to be drawn from any such evidence."

"You may not conclude that movant had knowledge, however, from proof of a mistake, negligence, carelessness, or a belief in an inaccurate proposition."

The jury returned a guilty verdict on each of the five counts, finding that movant committed one count of wire fraud by submitting fraudulent information as part of an application for the purchase of a car, on which a car dealership relied in approving a loan; that movant aided and abetted Coleman in one count each of bank fraud and aggravated identity theft as part of his plan to obtain a $15,000 loan from Wells Fargo Bank; and that movant aided and abetted Coleman in one count each of bank fraud and aggravated identity theft by participating in Coleman's scheme to fraudulently obtain a mortgage loan, from which Coleman correspondingly purchased a residential property, through the submission of false identity and employment information on the application.

*United States v. Flood*, 327 F. App'x 356, 357-58 (3d Cir. 2009). At the close of trial, movant filed a motion for acquittal and for a new trial, which the court denied. On June 9, 2008, the court sentenced movant to thirty-six months imprisonment, followed by five years of supervised release. She appealed, contending that the court abused its discretion by giving the "deliberate ignorance" instruction. *Id.* at 358. The Court of Appeals for the Third Circuit rejected movant's argument and affirmed her convictions and sentences. *Id.* at 359. Movant filed a petition for writ of certiorari in the United States Supreme Court, which was denied. *See Flood v. United States*, 130 S.Ct. 223 (Oct. 5, 2009).

Thereafter, movant filed a document in this court titled "complaint for declaratory judgment and injunctive relief." (D.I. 88) The court construed the complaint as a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, notified movant of this re-characterization, and provided movant with an AEDPA election form

to indicate if she wanted to proceed with her case under § 2255. Movant filed her AEDPA election form stating that she wished to proceed with her complaint as a § 2255 motion, and that she intended to file an amended § 2255 motion including all of her claims. After movant filed her amended § 2255 motion, the government filed a brief in opposition. Movant then filed a reply, as well as a motion for summary judgment.

## III. DISCUSSION

Movant's amended § 2255 motion asserts three claims: (1) there was insufficient evidence to support the jury's verdict; (2) trial counsel provided ineffective assistance during her pre-trial review and trial presentation of a videotaped interview that movant conducted with law enforcement officers about two weeks after her arrest; and (3) trial counsel failed to prepare adequately for trial, or to present movant's defense adequately at trial. The court will address these claims in seriatim.

### A. Claim One: Insufficient Evidence

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct her sentence on the grounds that

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255. However, "[o]nce a legal argument has been litigated and decided adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. § 2255." *United States v. Orejuela*, 639 F.2d 1055, 1057 (3d Cir. 1981). As a general rule, absent an intervening change in the

3

governing substantive law or other exceptional circumstances, movants pursuing relief under § 2255 are barred from re-litigating "questions which were raised and considered on direct appeal." *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993); *see also Davis v. United States*, 417 U.S. 333, 342 (1974).

In claim one, movant contends that there was insufficient evidence to support the guilty verdict on each count. This argument was heard and rejected by the court when it denied movant's post-trial motion for acquittal or new trial, as well as by the Third Circuit on direct appeal. Movant does not contend that an intervening change of law or an extraordinary circumstance has occurred since either adjudication. Accordingly, the court will deny claim one as procedurally barred.

## B. Claims Two and Three: Ineffective Assistance of Trial Counsel

In claim two, movant alleges that counsel inadequately prepared for trial and failed to present to the jury the entirety of her videotaped interview with law enforcement agents, which she contends would have exculpated her. Movant also alleges that the government "misrepresented" the interview by not showing it in its entirety. Claim three of the § 2255 motion generally asserts that counsel inadequately prepared for trial and failed to present a vigorous defense at trial. Movant's reply to the government's response sets forth several instances of counsel's allegedly inadequate preparation and defense.

Movant has properly raised these ineffective assistance of counsel arguments in the instant § 2255 motion rather than on direct appeal,[1] and the court must review the

---

[1]*See United States v. Garth,* 188 F.3d 99, 107 n.11 (3d Cir. 1999); *United States v. Cocivera,* 104 F.3d 566, 570 (3d Cir. 1996).

4

arguments pursuant to the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984). Pursuant to the first *Strickland* prong, movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, movant must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. Additionally, in order to sustain an ineffective assistance of counsel claim, movant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689. The court will address movant's two ineffective assistance of trial counsel arguments separately.

### 1. Claim two: videotaped interview

Prior to trial, the government produced to defense counsel a DVD containing movant's recorded interview with law enforcement agents, which was conducted approximately two weeks after her August 18, 2006 arrest. During the trial, the government admitted and published a DVD copy of the interview, which omitted the very end of the interview where movant invoked her *Miranda* rights and the officers' termination of the interview. Immediately prior to admitting the DVD, the court conducted a sidebar to discuss which portions of the video would be played for the jury and covered by the transcript to be distributed to the jurors. Based on the sidebar

5

conference and a comparison of the admitted DVD with the entire video clip produced to the defense and its transcript, it appears that only the "last line[s]" of the video were not played for the jury.

Now, in claim two, movant asserts that counsel erred by failing to require that the entire videotaped interview with law enforcement agents be shown during the trial, because providing the whole interview would have exculpated her. Movant also alleges that the government "misrepresented" the interview by not showing it in its entirety.

In this case, the DVD played in court showed that the interview began with law enforcement officers reviewing movant's written waiver of her *Miranda* rights with her. After discussing her current and past residences, movant stated that she operated Agape Ventures, a "consulting business in the areas of education, engineering technology, and entertainment." She stated that she used a PNC bank account for Agape Ventures, and that only she had access to that account. The officers then questioned movant about a check from "Ronald Fagin" that was deposited into the account. Movant replied that she was "aware" of the check, and that she "must have deposited it" if it was in her account. Although movant did not remember who gave her the check in question, she did state that it was a "referral." Movant admitted that she did not do any work for the referral fee, and that she had been unsuccessful in her attempts to return the payment to Ronald Fagin. Movant also admitted that she had rented an office, but she did not state for whom, for what purpose, or the location of the office.

Toward the end of the interview, the officers began to question movant more

aggressively about her involvement in the rental of the Cinnaminson office. The

specific conversation is set forth below.

> Movant: I, I didnt' sign a contract.
>
> Det. Skubik: But why did you pay this check? Who signed a contract? Who were you paying this check for, to have office space?
>
> Movant: I was . . .
>
> Det. Skubik: Who? Who was it, Teresa? Who had you get this space? We know where the space is. We got the copy of the check. Who is it? If you think you're not going to talk to us, we're done. If you are going to sit there, think about, well, should I tell them the truth, should I not thell them the truth. What's the story I should tell them? We're done.
>
> Movant: Unintelligble.
>
> Det. Skubik: Cause . . .
>
> Agt. Balceniuk: You going to help or not?
>
> Det. Skubik: You going to help yourself or not?

(D.I. 114 Exh. 1)

Detective Skubik's statement was the last sentence of the videotape shown to

the jury. The omitted portion of the videotape included the following four lines of

conversation.

> Movant: I want, I want to talk to my attorney.
>
> Det. Skubik: Okay. You go back in the cell and you will go in front of the Judge. Like I explained to you earlier. They will set bail and because you are out of state and we have no concrete address for you except out of state. There will be a secure bond, bail request.
>
> Movant: Okay.

7

Det. Skubik: And then, and until bail is set up or we go to trial, at least before prelim, you will have a preliminary hearing within 10 days, if you are insider. So come on.

(D.I. 114 Exh. 2) The interview then ended.

As a general rule, a defendant's invocation of *Miranda* rights is not published for the jury, because the potential prejudicial impact of admitting a defendant's exercise of *Miranda* rights outweighs any possible probative value from its admission. *See United States v. Hale*, 422 U.S. 171,173 (1975). In this case, contrary to movant's assertion, the omitted portion of the videotaped interview did not contain any exculpatory statements revealing "proof of someone other than movant having access to said account and account information and utilizing said accounts without movant's knowledge." (D.I. 102 at 3) Rather, the omitted portion contained movant's invocation of her *Miranda* rights, the detective's explanation that movant would be returned to her cell, and the cessation of the interview. Based on this record, the court concludes that defense counsel's failure to insist that the entire videotape be played in front of the jury was neither objectively unreasonable nor prejudicial under *Strickland*. And, to the extent movant contends that counsel was ineffective for failing to object to the videotape as a misrepresentation of her interview with police, the foregoing record demonstrates the factual baselessness of the claim.

Movant also contends that counsel provided ineffective assistance by showing her the video on a laptop without sound. However, movant concedes that she discussed the interview with counsel, and that counsel reviewed the video recording on another computer prior to trial. Movant also concedes that the government produced a transcript of the interview, which she reviewed prior to trial. Given movant's admissions

8

and the content of the interview, the court concludes that counsel's pre-trial review of the videotape did not amount to ineffective assistance. *See c.f. United States v. Felder*, 2009 WL 4362576, at *2 (E.D. Pa. Nov. 30, 2009)(rejecting ineffective assistance of counsel claim based on counsel's failure to conduct pre-trial review of videotape with defendant and counsel's use of tape at trial). Accordingly, the court will deny claim two in its entirety for failing to satisfy the standard set forth in *Strickland*.

### 2. Claim three: Inadequate trial preparation and presentation of defense

In claim three, movant asserts that counsel inadequately prepared for trial by: (a) not filing a motion to suppress movant's statement on the basis that movant's waiver of her *Miranda* rights was rendered involuntary by the severe emotional distress movant was feeling at the time of her statement; and (b) failing to file motions in limine "to exclude extrinsic fraudulent video with only the exception of cross-examining movant on her context dialogue prior to trial." Movant also contends that counsel failed to present a vigorous defense at trial by: (c) exercising unprofessional and unsound trial strategy in rejecting the government's proposed instruction that guilt of others (guilty pleas) should be presented to the jury; (d) failing to prevent the government's impeachment of Coleman; (e) failing to be appropriately concerned about Coleman's testimony and the court's instruction regarding the impeachment of Coleman; (f) failing to expose through cross-examination fabricated statements made by Fumo, the landlord of the Cinnaminson, New Jersey office location; (g) failing to cross-examine realtor Lewis; and (h) failing to present mitigating factors to jury, namely, that the "horrific ordeal" movant

suffered when first arrested significantly affected her state of mind and caused her to cooperate with the investigating officers.

### a. Claim three (a)

According to movant, the police used unjust conduct in obtaining her statement, because she was in a "devastated state" of worry about her child at the time of her arrest and police statement. Consequently, movant asserts that counsel was ineffective for failing to file a motion to suppress her police statement as having been obtained in violation of her *Miranda* rights.

The court liberally construes movant's argument to be that counsel should have filed a motion to suppress on the basis that her *Miranda* waiver was rendered involuntary, and that her statement was involuntary, because both were the result of the police coercively taking advantage of her severe emotional distress. These arguments are unavailing. Pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), statements made by a defendant during a custodial interrogation must be suppressed unless the defendant was provided certain warnings and voluntarily, knowingly, and intelligently waived his or her right to have a an attorney present during the interrogation. *Id.* at 475. A valid *Miranda* waiver has two distinct components:

> First, the relinquishment of the right must be voluntary in the sense that it was the product of a free and deliberate choice rather than the result of intimidation, coercion, or deception. Second, the waiver must be made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension, may a court properly conclude that *Miranda* rights have been waived.

*Moran v. Turbine*, 475 U.S. 412, 421 (1986).

10

In turn, "[t]he use of coerced confessions, whether true or false, is forbidden because the method used to extract them offends constitutional principles." *Lego v. Twomey*, 404 U.S. 477, 482-85 (1972). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). A statement is coerced, or involuntary, if the suspects's "will was overborne in such a way as to render his confession the product of coercion." *Arizona v. Fulminante*, 499 U.S. 279, 288 (1991). Courts must consider the totality of the circumstances in determining if a statement was freely and voluntarily given, which includes both the characteristics of the person providing the statement and the details of the interrogation. *Id.* at 285-88. The surrounding circumstances can also include "the length of the interrogation, its location, its continuity, [and] the defendant's maturity, education, physical condition, and mental health." *See Connelly*, 479 U.S. at 167.

When viewed under the totality of circumstances analysis, the record set forth in the court's discussion of claim two belies movant's vague assertion that her devastation from being separated from her child somehow rendered her police statement involuntary, and/or rendered her waiver of *Miranda* rights involuntary. The record demonstrates that movant was advised of her *Miranda* rights, she was not under the influence of drugs or alcohol, and she understood what was going on around her. There is no evidence that movant's mental condition affected her ability to give the statement or that it caused her to give the statement against her will. Rather, movant's police statement was made of her own free will after a knowing and voluntary waiver of her constitutional rights that was not coerced by the conduct of the police.

11

Therefore, defense counsel's failure to file a motion to suppress movant's statement as either coerced or obtained in violation of movant's *Miranda* rights did not amount to constitutionally ineffective assistance of counsel.

### b. Claim three (b)

Movant contends that counsel was ineffective for not filing a motion in limine to exclude the videotaped interview. Specifically, she asserts that the videotape was fraudulent, because some portions of the interview were not recorded.

The record does not support movant's contention that some portions of her police statement were unrecorded. Therefore, the fact that counsel failed to file a baseless motion in limine cannot constitute ineffective assistance.

### c. Claim three (c)

Movant contends that counsel erred in rejecting the instruction proposed by the government that "the guilt of others is not relevant, and that the evidence of another's guilty plea should not be considered as evidence of the defendant's guilt." (D.I. 73 at 93) Movant bases this argument on her belief that, "if counsel would have accepted the government's offer of submitting [this] instruction [], movant may not have been found guilty on all counts, given the fact [that] ample evidence was shown through the admitted guilt of others by accepting plea agreements." (D.I. 119 at 4)

The court concludes that movant's instant argument lacks merit, because movant appears to be operating under the misconception that the proposed instruction somehow would have directed the jury to consider the guilty pleas of others as evidence of her innocence when, in actuality, the instruction would have directed the jury that they should not consider those guilty pleas as demonstrating movant's

12

innocence or guilt. Significantly, defense counsel rejected the government's proposed instruction because she believed the guilt of others was material in proving movant's innocence. During counsel's colloquy with the court over the proposed instruction, counsel explained that the defense theory was counter to the government's proposed "guilt of others is irrelevant" instruction, and further stated:

| | |
|---|---|
| Counsel: | It's not an either/or in this case, your Honor, because it's a complex – there are multiple counts and it's a complex fact pattern, so to say what she knew, what she did, at the end, it's going to be the jury's decision what may be criminal acts and what might not be criminal acts, but I think that this is a problem. |
| Court: | [] I always understood that to be a legally appropriate instruction. That the fact that others have been convicted of similar crimes, the jury is still supposed to be looking at whether this defendant is guilty of what has been charged. |
| | So I guess I'm torn between understanding what your defense is or slightly understanding what your defense is and, certainly, giving legally appropriate instructions. |
| | I'm not sure how the guilt of others impacts what the jury has before us. |
| Counsel: | Well, it's a scheme, your Honor, and because it's a complex scheme, I think there were multiple people doing multiple things that my client did not do. |
| Court: | And I don't think anyone disputes that, necessarily. |
| Counsel: | Oh, I don't know about that, Judge. I think it's very hotly disputed. |
| Court: | So you think it's a matter of identity? |
| Counsel: | I think that's one issue. Who did what at what time when and as part of the scheme. The scheme is an issue here. There were fake driver's licenses. There were fake identities. There were fake documents, and I will tell you, Judge, some of the things I freely will admit that my client |

> signed and some of the things I will freely admit my client did not sign, and perhaps others did. So I think it's a confusing instruction for my case.

Court: Well, I mean, on the one hand, it's undisputed that these people have been convicted.

Counsel: I don't have a problem with anyone being convicted, Judge. I don't have a problem. But what does that mean?

Court: Well, I guess that is the question, isn't it, and I'm not sure under the circumstances that I want to spend a lot of time on this because I don't want to hold the government up, I mean hold the jury up, and we're at the point where I really need to be settling on these before your closing.

So, it's one thing for the government to say, and I think appropriately, that just because others have been convicted does not mean that this defendant isn't guilty. It's another thing for the court to be giving that instruction, and I guess that's the real question.

Counsel: What they argue, Judge, the government is free to argue whatever they want. But this is an instruction on how they should consider the guilty pleas, and I think that's where the problem is. The government wants to argue it, I don't have a problem with it, but the weight or the consideration of that is a big issue.

Given this record, movant cannot demonstrate that counsel's action satisfies either prong of *Strickland*.

Nevertheless, even if movant has not misinterpreted the proposed instruction, and her true argument is that counsel should have accepted the government's instruction as proposed, counsel's rejection of such instruction did not rise to the level of ineffective assistance. Movant has not alleged, and there is nothing in the record indicating, that the jury inferred guilt from the fact that others entered guilty pleas. Therefore, movant has failed to satisfy the prejudice prong of *Strickland*.

14

#### d. Claims three (d) & (e)

Coleman testified for the defense at movant's trial. On cross-examination, the government specifically questioned Coleman about the following convictions, characterizing them as "ten crimes involving dishonesty": 1988 conviction for issuing a bad check; 1988 conviction for theft by deception; 1989 theft conviction; 1990 theft conviction; 1991 forgery conviction; 1991 conviction for credit card fraud; 1992 conviction for theft by deception; 1993 criminal impersonation conviction; 1995 conviction for bank fraud, credit card fraud, conspiracy to commit bank fraud; and 2007 conviction for conspiring to utter counterfeit securities, bank fraud, identity theft, fraudulent use of a social security number, aggravated identity theft, and wire fraud. (D.I. 73 at 74) Then, during its closing argument, the government stated:

> Now, you heard Glenny Coleman today say no, no, she didn't [have the knowledge and intent to help Coleman commit the crimes charged]. I duped her. Glenny Coleman, who was convicted of a felony involving dishonesty not once, not twice, not three times, not four, not five, not six, not seven, not eight, not nine, but ten [].
>
> Sitting here today is a man [who], with nothing to lose, said, I duped her. How can you possibly believe him when he sits here and says, I'm a major conman.

(D.I. 73 at 111)

In claims three (d) and (e), movant contends that counsel was ineffective because she failed to prevent the government from impeaching Coleman with evidence of his prior convictions older than ten years. According to movant, counsel was so preoccupied with other issues that she was unaware of the government's failure to provide notice of its intent to use prior bad acts to impeach Coleman, as required by Federal Rule of Evidence 609. Movant also asserts that counsel's inattention resulted

15

in counsel not filing a motion in limine to exclude evidence of Coleman's prior convictions.

Admittedly, the record does not explicitly show, and the government does not indicate, if defense counsel was given "advance written notice" of the government's intent to impeach Coleman with his prior convictions. *See* F.R.E. 609(b) (2007). Nevertheless, the record implicitly demonstrates defense counsel's prior knowledge of Coleman's older convictions, as well as the government's intent to use those convictions to impeach him. First, the parties filed a joint set of proposed jury instructions which contained an instruction regarding the "impeachment of witness – prior conviction (F.R.E. 609)." (D.I. 43 at 58) This instruction stated, "You heard evidence that Glenny Coleman, a witness for the defendant, was previously convicted of several crimes involving dishonesty and false statements. You may consider this evidence, along with other pertinent evidence, in deciding whether or not to believe Glenny Coleman and how much weight to give to Glenny Coleman's testimony." *Id.* Second, defense counsel actually referred to several of Coleman's prior convictions when setting forth the defense theory that Coleman was a perpetual conman, schemer, and convict who duped movant into unknowingly participating in the underlying crimes he committed. For instance, during her opening statement, defense counsel mentioned Coleman's 2007 conviction, as well the fact that he had additional "prior convictions for crimes of falsification and fraud." (D.I. 71 at 117) During direct examination, counsel questioned Coleman about two of his older convictions: one for credit card fraud in

16

1991, and the other for wire fraud, bank fraud, and credit card fraud in 1995.[2] Defense counsel's questioning elicited Coleman's consistent responses that he was a major conman who had duped movant.

Given this record, the court cannot conclude that defense counsel's failure to object to the government's impeachment of Coleman with his prior convictions, or her failure to file a motion in limine to exclude such evidence, was due to inattention or lack of notice. Rather, defense counsel strategically used Coleman's criminal history to illustrate his long career as a conman in order to support the defense theory that movant was yet another person duped by him.

In turn, both this court and the Third Circuit held that there was sufficient evidence to support movant's convictions. As a result, the court concludes that movant cannot establish a reasonable probability that the outcome would have been different but for counsel's failure to object to the government's impeachment of Coleman and/or her failure to file a motion in limine to exclude such evidence. Accordingly, the court will deny claims three (d) and (e) as meritless.

### e. Claims three (f) and (g)

In claim three (f), movant contends that counsel's cross-examination of landlord Fumo was deficient because she failed to expose fabricated statements Fumo made during the government's direct examination. Movant, however, has failed to identify the

---

[2]Defense counsel also elicited Coleman's admission that, in 2007, he pled guilty to the crimes related to movant's case (conspiring to utter counterfeit securities, bank fraud, identity theft, fraudulent use of a social security number, aggravated identity theft, and wire fraud). Counsel questioned Coleman at length about the details of those crimes, and Coleman consistently stated that movant was an unknowing participant in those schemes.

alleged "fabricated" statements that counsel could or should have uncovered upon further cross-examination. In these circumstances, the court cannot conclude that counsel's cross-examination of landlord Fumo amounted to ineffective assistance.

In claim three (g), movant contends that counsel was ineffective for failing to cross-examine the real estate agent Lewis. The court rejects this allegation as factually baseless; defense counsel actually did cross-examine Lewis, who testified that movant was not the woman she identified in the photo array as the person accompanying Coleman to her office.

### f. Claim three (h)

Finally, movant contends that counsel provided ineffective assistance by failing to argue during trial that the "horrific ordeal" movant suffered when first arrested affected her state of mind and caused her to cooperate with the investigating officers. To the extent movant is implicitly alleging that her police statement was involuntary, the court has already rejected that contention as meritless in its discussion of claim three (a). Therefore, counsel did not provide ineffective assistance by failing to raise a meritless issue.

## IV. PENDING MOTIONS

Movant filed the following motions during the pendency of this proceeding: motion to stay restitution payments until after her release (D.I. 97); motion for leave to file a reply to the government's response (D.I. 116); motion to extend the time to file a reply (D.I. 117); and a motion for summary judgment (D.I. 118).

In her motion for summary judgment, movant reasserts the arguments raised in her § 2255 motion, and also raises a new ground for relief – that the aggravated identity

18

theft charges against her should be dismissed under *Flores-Figuerora v. United States*, 556 U.S. 646 (2009). Pursuant to *Flores-Figuerora,* a person cannot be convicted under the aggravated identity theft statute unless the government proves the defendant knew that the identifying information belonged to another person. Movant argues that the government did not offer such proof in her case.

Given the procedural posture of this proceeding and the arguments raised in the instant motion, the court construes the motion for summary judgment to be a motion to amend the pending § 2255 motion.[3] This motion to amend was filed well-outside the one-year limitations period applicable to § 2255 motions, and it seeks to add an entirely new claim to movant's § 2255 motion that does not relate back to the claims asserted in the original timely § 2255 motion. Accordingly, the court will deny the motion. *See* Fed. R. Civ. P. 15(a), (c); *see also Mayle v. Felix*, 545 U.S. 644 (2005); *United States v. Duffus*, 174 F.3d 333, 336-37 (3d Cir. 1999)(finding that a new ineffective assistance of counsel claim asserted in a motion to amend after AEDPA's limitations period had already expired did not relate back to an ineffective assistance of counsel claim asserted in the original timely habeas petition); *United States v. Thomas*, 221 F.3d 430, (3d Cir. 2000)("Under Fed. R. Civ. P. 15(c), an amendment . . . clarif[ying] or

---

[3]The court disagrees with the government's conclusion that the motion for summary judgment constitutes a second or successive § 2255 motion. (D.I. 121) In order for a subsequent § 2255 motion to be considered second or successive under 28 U.S.C. §§ 2244 & 2255(h), it must have been filed **after** the first § 2255 motion was adjudicated on the merits. *See, e.g., Benchoff v. Colleran*, 404 F.3d 812, 817 (3d Cir. 2005); *In re Olabode*, 325 F.3d 166, 169-73 (3d Cir. 2003). Here, the motion for summary judgment was filed during the pendency of movant's § 2255 proceeding. Therefore, the second or successive gatekeeping provisions of §§ 2244 & 2255(h) are not triggered. *See, e.g., Whab v. United States,* 408 F.3d 116 (2d Cir. 2005).

amplif[ying] a claim or theory in the petition may, in the District Court's discretion, relate back to the date of the petition if and only if the petition was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case").

As for movant's remaining motions, the court will deny them as moot. Movant's motion to stay her restitution payments (D.I. 97) is moot because the Federal Bureau of Prison's inmate locator indicates that movant has been released. Movant's motions for leave to file a reply (D.I. 116) and for an extension of time to file such a reply (D.I. 117) are moot because movant filed her reply to the government's response.

## V. EVIDENTIARY HEARING

Section 2255 requires a district court to hold an evidentiary hearing on a § 2255 motion unless the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. As previously explained, the record conclusively demonstrates that movant is not entitled to relief because her arguments are procedurally barred or without merit. Therefore, the court will deny movant's § 2255 motion(s) without an evidentiary hearing.

## VI. CONCLUSION

For the reasons stated, the court will dismiss movant's 28 U.S.C. § 2255 motion(s) to vacate, set aside, or correct sentence without an evidentiary hearing. Additionally, the court will not issue a certificate of appealability because movant's

§ 2255 motion(s) fail to assert a constitutional claim that can be redressed, and reasonable jurists would not find this assessment debatable. *See* 28 U.S.C. § 2253(c)(2)(A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right."); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); Fed. R. App. P. 22; 3d Cir. L.A.R. 22.2 (2011). The court shall issue an appropriate order.